UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――

SANDRA BETTERS,

             Plaintiff,

          v.                                   1:23-cv-00882

NARDIN ACADEMY, MARSHA SULLIVAN, MICHAEL
LAWLEY, FRANK EWING, LUKE JACOBS, CHARLIE
CHIAMPOU, PATRICIA LORENCE, KENT LORENCE,
THERESE FORTON-BARNES,

             Defendants.

―――――――――――――――――――――――――――――

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF MOTION TO STAY AND COMPEL ARBITRATION

Respectfully submitted,

PHILLIPS LYTLE LLP
Attorneys for Defendants
*Nardin Academy, Marsha Sullivan,*
*Charlie Chiampou, and Patricia Lorence*
One Canalside
125 Main Street
Buffalo, New York  14203
(716) 847-8400

Preston L. Zarlock
Joshua Glasgow
– Of Counsel –

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND ..............................................................................................................2

ARGUMENT ....................................................................................................................4

POINT I         ALL OF BETTERS' CLAIMS ARE SUBJECT TO ARBITRATION .................4

        A.         The Employment Agreement's broad arbitration clause
            manifests the parties' intent to arbitrate all employment-related disputes ..6

        B.         All of Betters' claims arise out of or relate to the Employment
            Agreement ...............................................................................................10

        C.         The Court should direct arbitration before the AAA for
            resolution under its Commercial or Employment Rules
            in Buffalo, New York ..............................................................................13

CONCLUSION ................................................................................................................15

**<u>TABLE OF AUTHORITIES</u>**

<u>Page</u>

**Cases**

*ACEquip Ltd. v. Am. Eng'g Corp.*,
    315 F.3d 151 (2d Cir. 2003) ........................................................................ 13, 14

*Arakawa v. Japan Network Group*,
    56 F.Supp.2d 349 (S.D.N.Y.1999) ...................................................................11

*Birts v. Vermillion*,
    2011 WL 13152677 (W.D. Ark. Mar. 14, 2011) ..................................................8

*Bristol v. Securitas Sec. Servs. USA, Inc.*,
    597 F. Supp. 3d 574 (S.D.N.Y. 2022) ..............................................................14

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) .........................................................................................7

*CAE Indus., Ltd. v. Aerospace Holdings Co.*,
    741 F. Supp. 388 (S.D.N.Y. 1989) ...................................................................13

*Celltrace Commc'n Ltd. v. Acacia Rsch. Corp.*,
    2016 WL 3407848 (S.D.N.Y. June 16, 2016), *aff'd in relevant part and
    vacated on other grounds*, 689 F. App'x 6 (2d Cir. 2017) ...................................9

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) ............................................................................................4

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*
    58 F.3d 16 (2d Cir. 1995) ...................................................................... 6, 10, 11

*Contec Corp. v. Remote Sol., Co.*,
    398 F.3d 205 (2d Cir. 2005) ............................................................................12

*Denney v. BDO Seidman, L.L.P.*,
    412 F.3d 58 (2d Cir. 2005) ..............................................................................12

*Doe v. Trump Corp.*,
    6 F.4th 400 (2d Cir. 2021) ...............................................................................13

*Dunmire v. Hoffman*,
    2006 WL 2466248 (S.D.N.Y. Aug. 24, 2006).....................................................12

*E.E.O.C. v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ..........................................................................................4

*Espinosa v. SNAP Logistics Corp.*,
   2018 WL 9563311 (S.D.N.Y. Apr. 3, 2018) ........................................................5

*Flores v. Nat'l Football League*,
   2023 WL 2301575 (S.D.N.Y. Mar. 1, 2023) ......................................................13

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987), *abrogated on
   other grounds by Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122 (2d
   Cir. 2017) .........................................................................................................10

*Gerena v. Neurological Surgery, P.C.*,
   2016 WL 3647782 (E.D.N.Y. June 9, 2016) ......................................................13

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010) ............................................................................................7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000) ..............................................................................................5

*Hall Street Assocs., L.L.C. v. Mattel, Inc.*,
   552 U.S. 576 (2008) ............................................................................................5

*Harrington v. Atl. Sounding Co.*,
   602 F.3d 113 (2d Cir. 2010) ................................................................................6

*Howard Fields & Assocs. v. Grand Wailea Co.*,
   848 F. Supp. 890 (D. Haw. 1993) .......................................................................8

*Hudson Specialty Ins. Co. v. New Jersey Transit Corp.*,
   2015 WL 3542548 (S.D.N.Y. June 5, 2015) ....................................................13

*Johnston v. Electrum Partners LLC*,
   2018 WL 3094918 (S.D.N.Y. June 21, 2018) ..................................................11

*Klein v. Nabors Drilling USA L.P.*,
   710 F.3d 234 (5th Cir. 2013) ..............................................................................8

*Krantz & Berman, LLP v. Dalal*,
   2010 WL 1875695 (S.D.N.Y. May 11, 2010) ..................................................14

*LAIF X SPRL v. Axtel, S.A. de C.V.*,
   390 F.3d 194 (2d Cir. 2004) ................................................................................5

*Lewis v. ANSYS, Inc.*,
   2021 WL 1199072 (S.D.N.Y. Mar. 30, 2021) ..................................................11

*LM Ins. Corp. v. Nat'l Interstate Ins. Co.*,
   2012 WL 12937134 (N.D. Tex. Oct. 31, 2012) ..................................................8

*Magid v. Waldman*,
    2022 WL 571424 (2d Cir. Feb. 25, 2022) ............................................................5

*McMahan Sec. Co. v. Forum Capital Mkts. L.P.*,
    35 F.3d 82 (2d Cir. 1994) ......................................................................................9

*Mehler v. Terminix Int'l Co. L.P.*,
    205 F.3d 44 (2d Cir. 2000) ....................................................................................6

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ....................................................................................7

*Milligan v. CCC Info. Servs. Inc.*,
    920 F.3d 146 (2d Cir. 2019) ..................................................................................6

*Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ............................................................................................10

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ............................................................................................10

*Morelli v. Alters*,
    2020 WL 1285513 (S.D.N.Y. Mar. 18, 2020) ....................................................13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ..................................................................................................9

*Murphy v. Acceptance Indem. Ins. Co.*,
    472 F. App'x 5 (2d Cir. 2012) ............................................................................10

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Beelman Truck Co.*,
    2017 WL 3049550 (S.D.N.Y. July 17, 2017) .....................................................14

*Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72 (2d Cir. 1998*), abrogated
    on other grounds by Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015)......................5, 6, 11

*Oppenheimer & Co., Inc. v. Neidhardt*,
    56 F.3d 352 (2d Cir. 1995) ....................................................................................5

*Oriental Commercial & Shipping Co. v. Rosseel, N.V.*,
    609 F. Supp. 75 (S.D.N.Y. 1985).........................................................................9

*Roby v. Corporation of Lloyd's*,
    996 F.2d 1353 (2d Cir. 1993).............................................................................12

*Sawyer Co. v. John W. Cowper Co.*,
    55 A.D.2d 774 (3d Dep't 1976) .........................................................................13

*Scher v. Bear Stearns*,
    723 F. Supp. 211 (S.D.N.Y.1989) ................................................................12

*Shearson Lehman Hutton, Inc. v. Wagoner*,
    944 F.2d 114 (2d Cir. 1991) ......................................................................6

*Shredded Wheat Co. v. Humphrey Cornell Co.*,
    250 F. 960 (2d Cir. 1918) (Hand, J.) ..........................................................10

*Simeon v. Domino's Pizza LLC*,
    2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019) ..................................................5

*Stop & Shop Supermarket Co. v. United Food & Commercial*
    *Workers Union Local 342*, 246 F. App'x 7 (2d Cir. 2007) .................................13

*Wework Companies Inc. v. Zoumer*,
    2016 WL 1337280 (S.D.N.Y. Apr. 5, 2016) ..................................................13

*Zandman v. Nissenbaum*,
    53 A.D.2d 837 (1st Dep't 1976) ................................................................14

**Statutes**

9 U.S.C. § 2 ................................................................................................4

9 U.S.C. § 3 ................................................................................1, 2, 5, 14

9 U.S.C. § 4 ....................................................................................1, 2, 14

9 U.S.C. § 5 ........................................................................................2, 13

42 U.S.C. § 1981 ..........................................................................................2

CPLR Article 75 ............................................................................................5

CPLR 7503 ..................................................................................................5

Fed. R. Civ. P. 5.2 ........................................................................................4

Fed. R. Civ. P. 12(b)(6) ................................................................................2

Labor Law § 740 ..........................................................................................2

NPCL § 715-b ..............................................................................................2

**Other Authorities**

5C Charles Alan Wright et al., Federal Practice & Procedure
    § 1360 (3d ed. 2004)..................................................................................2

## PRELIMINARY STATEMENT

Plaintiff, Sandra Betters sought and accepted the position as President of Nardin Academy. While many within the Nardin community had differing opinions, the previous President was able to achieve cooperation and harmony. Betters, however, failed miserably in that role. Her disastrous tenure as Nardin's President was notable for unprecedented public discord and mass resignations, including protests by families, students, faculty, and staff against Betters' continued employment. (Compl. ¶¶ 250-51, 257-58). Donors announced that they would withhold funding if Betters continued in her position and Nardin's entire Board of Trustees was replaced in an effort to quell the conflict Betters engendered. (*Id.* ¶¶ 254, 256, 273-74). After Betters reneged on her agreement to step down, a new Board elected to terminate her. (*Id.* ¶¶ 269, 278, 280).

In accepting her position with Nardin, Betters agreed to arbitrate all disputes "arising out of or relating to" her employment agreement (the "Employment Agreement"). Despite this unambiguous promise to resolve employment-related disputes outside the court system, Betters nonetheless filed this action, publicizing scurrilous allegations unrelated to her claims in an effort to smear the reputation of her former employer. She asserts a claim for breach of the Employment Agreement, five separate causes of action for retaliatory discharge, and a defamation claim relating to alleged (but unspecified) comments made by another Nardin employee regarding Betters' abuse of her position.

All of Betters' claims arise out of or relate to her Employment Agreement. Accordingly, they must be arbitrated and this action should be stayed pursuant to 9 U.S.C. §§ 3 and 4. Further, because the Employment Agreement does not specify the appointment method or location of the arbitration, the Court should direct arbitration before the American Arbitration Association ("AAA") for resolution under its Commercial or Employment Rules in Buffalo, New York. *See*

9 U.S.C. §§ 4, 5.  Defendants Nardin, Marsha Sullivan, Charlie Chiampou, and Patricia Lorence

("Defendants") request an order compelling arbitration and staying this action.

## BACKGROUND

Nardin hired Betters as its President in June 2021 under an Employment Agreement with

a broad arbitration clause:

> Any controversy, dispute or claim arising out of or relating to this Agreement or
> breach thereof shall first be settled through good faith negotiation.  If the dispute
> cannot be settled through negotiation, the parties agree to attempt in good faith to
> settle the dispute by mediation and/or arbitration by a mutually agreed-upon
> mediator or arbitrator.

(Zarlock Dec. Ex. 1, at 7-8).  Betters failed to comply with these mandatory provisions.  Instead,

she filed a rambling, 328-paragraph complaint asserting seven causes of action.

The details of Betters' conclusory allegations are discussed in greater detail in

Defendants' memorandum of law in support of their Fed. R. Civ. P. 12(b)(6) motion, being filed

herewith.[1]  Defendants will not repeat those details here in the interest of judicial economy.  In

brief summary, Betters claims that Nardin breached the Employment Agreement by refusing to

pay her severance, despite the fact that she refused to sign a severance agreement as required by

the Employment Agreement.  (Compl. ¶¶ 280, 299).

Betters asserts five separate employment-based retaliation claims, under 42 U.S.C.

§ 1981, the New York Human Rights Law ("HRL"), the New York False Claims Act ("FCA"),

New York Labor Law ("Labor Law") § 740, and New York Not-for-Profit Corporation Law

---

[1] Defendants seek to compel arbitration and stay this action pursuant to 9 U.S.C. §§ 3 and 4.  "A
motion to stay also is not within the ambit of the defenses enumerated in Rule 12(b)."  5C
Charles Alan Wright et al., Federal Practice & Procedure § 1360 (3d ed. 2004).  Accordingly,
Defendants are filing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) to avoid any
potential default.  Defendants expressly do not waive arbitration by taking that necessary step.

("NPCL") § 715-b.  (Compl. ¶ 14).  All of these claims are pled against Nardin.  Some are also pled against several of Nardin's former or current Trustees.  (Compl. ¶¶ 289, 317).

Betters, however, fails to plead facts identifying protected conduct, notice to Defendants, or causation.  Instead, the complaint affirmatively demonstrates that Betters was removed because her tenure as President of Nardin was an unmitigated disaster.  The complaint admits that Betters "angered parents and faculty members," and that Nardin "faculty, staff, [and] students" organized a "student walk-in and a community march in protest of Dr. Betters."  (*Id.* ¶¶ 250, 285; *see also* ¶¶ 251, 257-58).  Betters concedes that certain donors announced they were "withholding any financial support for the Academy until the Board of Trustees made a leadership change" and others "threatened to withhold all future contributions until and unless Dr. Betters . . . resigned."  (*Id.* ¶¶ 254, 256).  And Betters acknowledges that "71 Nardin families sent a letter to the Board threatening to withhold tuition deposits if Dr. Betters' supporters remained."  (*Id.* ¶ 273).  A new Board of Trustees terminated Betters only after these events, and after she agreed to leave the office of President but then reneged on that agreement.  (*Id.* ¶¶ 269, 278, 280).

Betters also asserts an employment-related defamation claim against Lorence, Lorence's husband, and another Defendant.  (*Id.* ¶ 323).[2]  Lorence was an employee of Nardin, and Betters' subordinate, who taught a class in which Betters' daughter was enrolled.  (*Id.* ¶ 208).  Betters sent an email to Lorence from her Nardin account in which she sought to abuse her authority as President.  In that email, Betters stated that her daughter "inadvertently completed the wrong [vocabulary] list, which in the end still resulted in her learning new vocabulary, but lost credit

---

[2] Although there are two Defendants with the surname Lorence, this memorandum of law, filed on behalf of Patricia Lorence (and others), will refer to her as "Lorence."

when this happened." (Zarlock Dec. Ex. 2).[3]  Betters indicated she "was surprised to learn that a student, who completed her work, was not given the opportunity to correct the error without penalty" and expressed her "wish" that her daughter "will not be penalized but rather supported and encouraged to continue these behaviors throughout life." (*Id.*).  According to the complaint, Lorence shared the email with other Nardin faculty members "in order to 'prove' that Dr. Betters was intimidating her into changing [Betters'] child's grade." (*Id.* ¶¶ 209-10).

All of these claims arise out of or relate to the Employment Agreement and must be arbitrated.

## ARGUMENT

## POINT I

## ALL OF BETTERS' CLAIMS ARE SUBJECT TO ARBITRATION

The Employment Agreement is subject to the Federal Arbitration Act ("FAA") because it is a written agreement "evidencing a transaction involving commerce." 9 U.S.C. § 2.  The FAA's language reflects the "broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).  "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control. Only that general practice need bear on interstate commerce in a substantial way." *Id.* at 56-57 (internal quotation marks and citations omitted).

Here, Betters' employment contract within the educational system is activity that in the aggregate has a substantial effect on interstate commerce.  "Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *E.E.O.C. v. Waffle*

---

[3] Pursuant to Fed. R. Civ. P. 5.2(a), certain details in this email are redacted.  An unredacted copy is submitted under seal.  *See* Fed. R. Civ. P. 5.2(d).

*House, Inc.*, 534 U.S. 279, 289 (2002); *see also Simeon v. Domino's Pizza LLC*, 2019 WL

7882143, at *3 (E.D.N.Y. Feb. 6, 2019) (holding "[m]eal delivery services unquestionably

'affect' and 'involve' commerce and commercial activity" and "Agreement falls within the broad

scope of employment contracts governed by the FAA").[4]

    A party that "commences litigation" has "refused to arbitrate" under the FAA, and may

be compelled to do so by the district court. *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194,

198 (2d Cir. 2004).  "[T]he party resisting arbitration bears the burden of proving that the claims

at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91

(2000); *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) (noting that "[i]f

the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts,

the party opposing may not rest on a denial but must submit evidentiary facts showing that there

is a dispute of fact to be tried").

    In deciding whether an action should be directed to arbitration, this Court must

determine:  (i) whether the parties had an agreement to arbitrate; (ii) the scope of that agreement;

(iii) if federal statutory claims are asserted, whether Congress intended those claims to be non-

arbitrable; and (iv) if some, but not all, of the claims are subject to arbitration, whether to stay

the balance of the proceedings pending arbitration.  *See Oldroyd v. Elmira Sav. Bank, FSB*, 134

---

[4] To the extent Betters contends the Employment Agreement is not governed by the FAA, a stay
pending arbitration would nonetheless be mandatory under New York law.  *See Espinosa v.
SNAP Logistics Corp.*, 2018 WL 9563311, at *6 (S.D.N.Y. Apr. 3, 2018) ("Where a court finds
compels arbitration pursuant to a written agreement, both the FAA and New York law mandate
that the action be stayed pending arbitration." (citing 9 U.S.C. § 3; CPLR § 7503(a)).  "[T]he
standards provided by the Federal Arbitration Act . . . and Article 75 of the New York Civil
Practice Law and Rule[s] . . . are similar."  *Magid v. Waldman*, 2022 WL 571424, at *1 (2d Cir.
Feb. 25, 2022).  Indeed, "[t]he text of the FAA was based upon that of New York's arbitration
statute."  *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 589 n.7 (2008).  To the extent
necessary, Defendants make their request to compel arbitration and stay proceedings in the
alternative under CPLR 7503.

F.3d 72, 75-76 (2d Cir. 1998), *abrogated on other grounds by Katz v. Cellco P'ship*, 794 F.3d

341, 347 (2d Cir. 2015). "[T]he text, structure, and underlying policy of the FAA mandate a stay

of proceedings when all of the claims in an action have been referred to arbitration and a stay

requested." *Katz*, 794 F.3d at 347.

## A.  The Employment Agreement's broad arbitration clause manifests the parties' intent to arbitrate all employment-related disputes

Betters agreed to an arbitration clause that clearly manifests an intention to submit any

and all employment-related disputes to arbitration. *See Milligan v. CCC Info. Servs. Inc.*, 920

F.3d 146, 151 (2d Cir. 2019) (holding "an enforceable arbitration clause in a contract is one that

clearly manifests an intention by the parties to submit certain disputes to a specified third party"

(quotation omitted)). It requires that "[a]ny controversy, dispute or claim arising out of or

relating to" the Employment Agreement be subject to alternative dispute resolution. (Zarlock

Dec. Ex. 1, at 7).

This is a classic "broad" arbitration clause. *Shearson Lehman Hutton, Inc. v. Wagoner*,

944 F.2d 114, 121 (2d Cir. 1991); *see also Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.* 58

F.3d 16, 20 (2d Cir. 1995) ("The clause in this case, submitting to arbitration '[a]ny claim or

controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause.");

*Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49–50 (2d Cir. 2000) (holding that an arbitration

clause covering "'any controversy or claim between the parties arising out of or relating to' the

Agreement" is "a classically broad one"). Betters "bears the burden of showing the agreement to

be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010).

Because "agreements to arbitrate are valid, irrevocable, and enforceable" under the FAA, Betters

can avoid the plain language of the arbitration clause only "upon such grounds as exist at law or

in equity for the revocation of any contract." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017).

Betters cannot show that the Employment Agreement is invalid because of fraud, duress, or unconscionability. Betters is a sophisticated professional who entered into an arms-length contract with her employer. (*See, e.g.*, Compl. ¶¶ 82-84). The Employment Agreement contains terms highly favorable to Betters, including an annual salary starting at $240,000 and increasing to $260,000, reimbursement for expenses, use of the Nardin House for a period of time, and generous employee benefits. (Zarlock Dec. Ex. 1, at 2-4). Indeed, Betters affirmatively pleads a claim for breach of the Employment Agreement, thereby acknowledging the validity of the contract. (Compl. ¶¶ 298-301).

Further, the "presumption of arbitrability applies even to disputes about the enforceability of the entire contract containing the arbitration clause." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010). Accordingly, any argument as to invalidity of the Employment Agreement would itself be arbitrable. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) (holding that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance").

Nardin and Betters expressed their mutual intent to resolve future disputes through alternative channels in a way that would permit negotiation first, then allow for mediation if all parties agreed, but required arbitration as a final resort. (Zarlock Dec. Ex. 1, at 7-8). Notably, the Employment Agreement includes a choice of law clause, but does not provide for a choice of venue in any court. (*Id.* at 8). Nothing in the Employment Agreement evinces an intent to resolve disputes in a judicial forum. Instead, the only natural reading of the arbitration clause

allows for pre-dispute settlement measures, but ultimately contemplates arbitration if an initial resolution is unattainable.

Clauses that refer to "mediation and/or arbitration" permit one of two procedures, both of which end in arbitration. First, "[a] party could choose to settle its claims through mediation; however, in the event that the claims were not resolved during mediation, the party is bound to pursue the claims in arbitration." *Birts v. Vermillion*, 2011 WL 13152677, at *5 (W.D. Ark. Mar. 14, 2011). Second, "a party could elect to skip mediation and proceed straight to arbitration." *Id.* "Regardless of the path chosen to pursue the claims, it is clear that the ultimate forum is arbitration, not the courts." *Id.* Other cases are in accord. In *LM Ins. Corp. v. Nat'l Interstate Ins. Co.*, 2012 WL 12937134 (N.D. Tex. Oct. 31, 2012), the court held that a clause requiring "alternative dispute resolution ('ADR'), including but not necessarily limited to mediation and/or arbitration" was "unambiguous in that it requires [a party] to submit to arbitration where [the other party] requested it." *Id.* at *1, *3. This conclusion flows from the rule that "[w]hen a 'dispute resolution clause clearly indicates that the parties accepted that arbitration was a *potential* method of dispute resolution,' then an argument 'that the parties did not agree to arbitrate is without merit.'" *Id.* at *3 (quoting *Howard Fields & Assocs. v. Grand Wailea Co.*, 848 F. Supp. 890, 896 (D. Haw. 1993)). The Fifth Circuit has similarly explained that an agreement to settle disputes through "mediation and/or arbitration" merely "preserves options for nonbinding dispute resolution before final, binding arbitration." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 238, 239 (5th Cir. 2013). "[T]he permissive language does not cast doubt on the unambiguous intent of the Program to resolve disputes outside of the courtroom." *Id.* at 239. Betters' contract must be construed similarly.

Even if the arbitration clause could be construed as imprecise or otherwise inartfully drafted, the Supreme Court has directed federal courts to resolve questions regarding the scope of arbitrability—including construction of contractual language—in favor of the party moving to compel arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). Thus, "arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *McMahan Sec. Co. v. Forum Capital Mkts. L.P.*, 35 F.3d 82, 88 (2d Cir. 1994); *see also Oriental Commercial & Shipping Co. v. Rosseel, N.V.*, 609 F. Supp. 75, 77-78 (S.D.N.Y. 1985) (enforcing arbitration clause that stated only: "Arbitration: If required in New York City"). Betters cannot clear that high hurdle.

Nor does the Employment Agreement's language that the parties shall "attempt in good faith to settle the dispute by mediation and or arbitration" change the result that parties should be directed to arbitration. (Zarlock Dec. Ex. 1, at 8). For example, in *Celltrace Communications Ltd. v. Acacia Research Corp.*, 2016 WL 3407848 (S.D.N.Y. June 16, 2016), *aff'd in relevant part and vacated on other grounds*, 689 F. App'x 6 (2d Cir. 2017), the agreement provided that "[i]n the event of any dispute and if the Parties cannot resolve the dispute through negotiation, the Parties agree first to try in good faith to settle the dispute by formal arbitration . . . ." 2016 WL 3407848, at *3. In holding that the agreement requires binding arbitration, the Court expressly rejected the plaintiff's argument that the agreement's "try in good faith" language made the agreement to arbitrate nonbinding. *Id*., 2016 WL 3407848, at *5. ("Although

unforeseen developments could theoretically prevent the parties from completing the arbitration process, the parties must 'exhaust[ ] all the possibilities' to arbitrate but fail due to some 'formidable obstacle' before they may resort to litigation.") (citing *Shredded Wheat Co. v. Humphrey Cornell Co.*, 250 F. 960, 966 (2d Cir. 1918) (Hand, J.)).

## B.    All of Betters' claims arise out of or relate to the Employment Agreement

All of Betters' claims, including those against individual Defendants, arise out of or relate to her employment and thus fall within the scope of her arbitration clause.  Courts must "construe arbitration clauses as broadly as possible." *Collins & Aikman Prod. Co.*, 58 F.3d at 19 (quotation omitted).  "If the allegations underlying the claims 'touch matters' covered by the parties' [contracts], then those claims must be arbitrated, whatever the legal labels attached to them." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987), *abrogated on other grounds by Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122, 124 n.1 (2d Cir. 2017). (quoting *Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624-25 n. 13 (1985)).

The plain language of the Employment Agreement requires arbitration of "[a]ny controversy, dispute or claim arising out of or relating to this Agreement or breach thereof." (Zarlock Dec. Ex. 1, at 7-8).  The phrase "arising out of" is "very broad and comprehensive and requires only some causal relationship." *Murphy v. Acceptance Indem. Ins. Co.*, 472 F. App'x 5, 6 (2d Cir. 2012) (quotation omitted).  And the ordinary meaning of the phrase "relating to" is "a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed.1979).

Betters' breach of contract claim obviously qualifies as arising out of or relating to the Employment Agreement.  The same is true of her five separate retaliation claims.  All of the

- 10 -

conduct Betters alleges in the complaint concerns her employment at Nardin, which would not have occurred but for her Employment Agreement.  Employment-related tort claims like those advanced by Betters also invariably fall within the scope of broad employment-agreement arbitration clauses.  *See, e.g.*, *Oldroyd*, 134 F.3d at 76–77 (where plaintiff "alleges that he was terminated under circumstances giving rise to a retaliatory discharge claim, such claim touched upon matters covered by the employment agreement and therefore is clearly within the scope of the agreement's arbitration clause"); *Arakawa v. Japan Network Group*, 56 F.Supp.2d 349, 352–353 (S.D.N.Y.1999) (holding that plaintiff's sexual harassment, wrongful discharge, and discrimination claims were subject to binding arbitration under similar clause); *Johnston v. Electrum Partners LLC*, 2018 WL 3094918, at *10 (S.D.N.Y. June 21, 2018) (wrongful discharge and unlawful retaliation claims subject to arbitration clause covering "claims arising out of or relating to [the employment] Agreement").  "The mere fact that" plaintiff brings "a tort claim, rather than one for breach of the Contracts, does not make the claim any less arbitrable." *Collins & Aikman Prod. Co.*, 58 F.3d at 23.

Betters' defamation claim also arises out of or relates to her employment at Nardin.  *See Lewis v. ANSYS, Inc.*, 2021 WL 1199072, at *8 (S.D.N.Y. Mar. 30, 2021) ("Similarly, Plaintiff's defamation claims, which concern 'statements . . . concerning the reasons for plaintiff's termination,' are 'integrally linked to plaintiff's employment' and therefore fall directly within the scope of the above arbitration provision.").  Lorence's alleged opinions were proffered in response to Betters' misconduct in her role as President of Nardin.  (Compl. ¶¶ 208-12).  The complaint affirmatively alleges that Lorence, herself an employee of Nardin, shared Betters' unethical email with other employees of Nardin "in order to 'prove' that Dr. Betters was intimidating her into changing [Betters'] child's grade."  (*Id.* ¶ 210).  Lorence's concerns arose

only because Betters misused her position as President, a position Betters would not have had absent the Employment Agreement.

These claims are all arbitrable regardless of whether they are asserted against Nardin or Nardin's trustees and employees.  It is well established "that the signatory to an arbitration agreement is estopped from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."  *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 209 (2d Cir. 2005) (quotations omitted); *see also Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005). "Generally, employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."  *Dunmire v. Hoffman*, 2006 WL 2466248, at *3 (S.D.N.Y. Aug. 24, 2006); *see also Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) (arbitration agreement extended to individual agents of signatory); *Scher v. Bear Stearns*, 723 F. Supp. 211, 216-17 (S.D.N.Y.1989)  (holding "[a]cts by employees of one of the parties to a customer agreement are equally arbitrable as acts of the principal").  "If it were otherwise, it would be too easy to circumvent [an arbitration] agreement by naming individuals as defendants instead of the [principals] themselves."  *Roby*, 996 F .2d at 1360.

Betters is accordingly equitably estopped from avoiding arbitration of her claims against any of the individual defendants.  Defendants Sullivan, Lawley, Ewing, Jacobs, Chiampou, and Lorence were Trustees or employees of Nardin.  (Compl. ¶¶ 20-25).  The gravamen of her complaint is that each of these Defendants engaged in a conspiracy to promote her ouster. Betters cannot rely upon this joint action theory, then seek to avoid a broad arbitration clause by naming individuals.  By alleging that the individual Defendants and Nardin "were jointly engaged in the alleged discrimination and retaliation," all of Betters' claims fall within the broad

scope of the Employment Agreement's arbitration clause.  *Flores v. Nat'l Football League*, 2023 WL 2301575, at \*10 (S.D.N.Y. Mar. 1, 2023) (citing *Doe v. Trump Corp.*, 6 F.4th 400, 412 n.8 (2d Cir. 2021)).

**C.    The Court should direct arbitration before the AAA for resolution under its Commercial or Employment Rules in Buffalo, New York**

The FAA specifically directs that "if no method" for the selection of an arbitrator is provided "or if a method be provided and any party thereto shall fail to avail himself of such method," then "the court shall designate and appoint an arbitrator or arbitrators."  9 U.S.C. § 5. Indeed, it is well settled that the court is empowered by the FAA to appoint an arbitrator under these circumstances.  *See Stop & Shop Supermarket Co. v. United Food & Commercial Workers Union Local 342*, 246 F. App'x 7, 10-11 (2d Cir. 2007); *ACEquip Ltd. v. Am. Eng'g Corp.*, 315 F.3d 151, 155-57 (2d Cir. 2003).[5]

Betters could have complied with the Employment Agreement and sought to designate a mutually acceptable arbitrator through negotiation with Nardin.  Her failure to do so does not invalidate the arbitration clause, but simply requires the Court to select an arbitrator.  *CAE Indus., Ltd. v. Aerospace Holdings Co.*, 741 F. Supp. 388, 391-93 (S.D.N.Y. 1989) (compelling arbitration and designating arbitrator although "agreement lack[ed] the specific method by which to proceed"); *Sawyer Co. v. John W. Cowper Co.*, 55 A.D.2d 774, 774–775 (3d Dep't 1976) (where the parties agreed to arbitrate, the court was correct in directing arbitration before the most appropriate tribunal available under the circumstances, even in view of the absence of any

---

[5] "Courts within this circuit have routinely rejected the argument that the procedural rules governing arbitration"—including "the forum, binding nature, and rules of discovery"—"constitute essential terms." *Morelli v. Alters*, 2020 WL 1285513, at \*9 (S.D.N.Y. Mar. 18, 2020) (quoting *Hudson Specialty Ins. Co. v. New Jersey Transit Corp.*, 2015 WL 3542548, at \*7 (S.D.N.Y. June 5, 2015)); *see also Gerena v. Neurological Surgery, P.C.*, 2016 WL 3647782, at \*4 n.4 (E.D.N.Y. June 9, 2016); *Wework Companies Inc. v. Zoumer*, 2016 WL 1337280, at \*5 (S.D.N.Y. Apr. 5, 2016).

provision for a tribunal selection); *Zandman v. Nissenbaum*, 53 A.D.2d 837 (1st Dep't 1976) (where an agreement among members of a professional dentistry corporation provided that disputes would be arbitrated under the rules of the American Medical Association but the Association did not provide for arbitration of such issues, the court should have appointed an arbitrator).

The AAA is frequently selected as an arbitral forum where no arbitrator is specifically identified in an agreement.  *See, e.g.*, *Krantz & Berman, LLP v. Dalal*, 2010 WL 1875695, at *6 (S.D.N.Y. May 11, 2010).  Courts have recognized that AAA panels have "extensive rosters of experienced arbitrators."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Beelman Truck Co.*, 2017 WL 3049550, at *2 (S.D.N.Y. July 17, 2017).  Given the nature of Betters' claims, AAA's Commercial or Employment Rules would be appropriate.

The FAA also provides that if the parties do not specify the location of the arbitration, the court shall order arbitration in its district.  9 U.S.C. § 4.  Although an arbitration clause remains valid regardless of whether it identifies an arbitrator or specify venue or location, *see Bristol v. Securitas Sec. Servs. USA, Inc.*, 597 F. Supp. 3d 574, 579 (S.D.N.Y. 2022), the FAA cabins a district court's discretion to compel a party to arbitrate by requiring the court to order arbitral proceedings in its own district.  *See ACEquip Ltd.*, 315 F.3d at 156–57.  Arbitration in Buffalo, New York is further supported by the fact that Betters filed her complaint here in the first instance.

Accordingly the Court should direct arbitration before the AAA for resolution under its Commercial or Employment Rules in Buffalo, New York.

Case 1:23-cv-00882-JLS   Document 40   Filed 10/27/23   Page 21 of 21

## **CONCLUSION**

For the reasons set forth herein, Betters' claims should be referred to arbitration, the

Court should direct arbitration before the AAA for resolution under its Commercial or

Employment Rules (or other appropriate arbiter) in Buffalo, New York, and this action should be

stayed.

Dated:  Buffalo, New York
         October 27, 2023

PHILLIPS LYTLE LLP


By: /s/Preston L. Zarlock
     Preston L. Zarlock
     Joshua Glasgow
Attorneys for Defendants
*Nardin Academy, Marsha Sullivan,*
*Charlie Chiampou, and Patricia Lorence*
One Canalside
125 Main Street
Buffalo, New York  14203
Telephone No. (716) 847-8400
pzarlock@phillipslytle.com
jglasgow@phillipslytle.com

Doc #11444193