UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

SANDRA BETTERS,

        Plaintiff,

      v.                                 1:23-cv-00882

NARDIN ACADEMY, MARSHA SULLIVAN, MICHAEL
LAWLEY, FRANK EWING, LUKE JACOBS, CHARLIE
CHIAMPOU, PATRICIA LORENCE, KENT LORENCE,
THERESE FORTON-BARNES,

        Defendants.

———————————————————————

**DEFENDANTS NARDIN ACADEMY, MARSHA SULLIVAN,
CHARLIE CHIAMPOU, AND PATRICIA LORENCE'S MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

Respectfully submitted,

PHILLIPS LYTLE LLP
Attorneys for Defendants
*Nardin Academy, Marsha Sullivan,*
*Charlie Chiampou, and Patricia Lorence*
One Canalside
125 Main Street
Buffalo, New York  14203
(716) 847-8400

Preston L. Zarlock
Joshua Glasgow
– Of Counsel –

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

ALLEGATIONS AND INTEGRAL DOCUMENTS .......................................... 3

    A.    Nardin hires Betters pursuant to a written Employment Agreement ............... 3

    B.    Betters' disastrous term as President prompts widespread dissension, and eventual termination ................................................................................. 4

    C.    Betters offers only conclusory and legally insufficient allegations for her claims ................................................................................................ 6

ARGUMENT ...................................................................................................... 9

POINT I      BETTERS FAILS TO STATE A CLAIM UNDER § 1981 OR THE HRL . 10

    A.    Betters does not allege conduct protected by § 1981 or the HRL ........ 11

    B.    Betters does not allege that the Defendants were aware of any protected activity .................................................................................. 12

    C.    Betters does not allege facts suggesting a causal connection between protected activity and an adverse employment action ........... 14

POINT II     BETTERS FAILS TO STATE A CLAIM FOR WHISTLEBLOWER RETALIATION UNDER ANY OF THE THREE STATUTES SHE RELIES UPON ................................................................................. 16

    A.    Betters' whistleblower retaliation claims fail as a matter of law .......... 16

    B.    Betters does not have a private right of action under § 715-b and Betters has not alleged a violation of its terms ..................................... 20

POINT III    BETTERS FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ................................................................................... 22

POINT IV    BETTERS FAILS TO STATE A CLAIM FOR DEFAMATION ............... 23

CONCLUSION .................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011) ......................................................................10

*Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*,
   2015 WL 13654007 (S.D.N.Y. Mar. 26, 2015) ..........................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................... 9

*In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.*,
   701 F.Supp.2d 356 (E.D.N.Y.2010) ............................................................ 7

*Becker v. Cephalon, Inc.*,
   2015 WL 5472311 (S.D.N.Y. Sept. 15, 2015) ............................................. 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................... 9

*Belton v. Borg & Ide Imaging, P.C.*,
   512 F. Supp. 3d 433 (W.D.N.Y. 2021) .......................................................16

*Blythe v. City of New York*,
   963 F. Supp. 2d 158 (E.D.N.Y. 2013) .......................................................11

*Brimelow v. New York Times Co.*,
   2021 WL 4901969 (2d Cir. Oct. 21, 2021) .................................................25

*Burlington Northern & Santa Fe Railway Company v. White*,
   548 U.S. 53 (2006) .....................................................................................15

*Butler v. City Sch. Dist. of New Rochelle*,
   2020 WL 6639121 (S.D.N.Y. Nov. 12, 2020) .............................................12

*Carr v. New York City Transit Auth.*,
   76 F.4th 172 (2d Cir. 2023)................................................................. 15, 19

*CBOCS W., Inc. v. Humphries*,
   553 U.S. 442 (2008)........................................................................... 10, 11

*Cooper v. New York State Dep't of Lab.*,
   819 F.3d 678 (2d Cir. 2016) ......................................................................12

*Cruz v. Coach Stores, Inc.*,
   202 F.3d 560 (2d Cir. 2000) ................................................................. 10, 12

*Cruz v. TD Bank, N.A.*,
   22 N.Y.3d 61 (2013) ................................................................................21

*Cummings v. City of New York*,
   2020 WL 882335 (S.D.N.Y. Feb. 24, 2020) .............................................24

*Dasrath v. Stony Brook Univ. Med. Ctr.*,
   2014 WL 1760907 (E.D.N.Y. Apr. 29, 2014) ......................................14, 15

*Dhaliwal v. Salix Pharms., Ltd.*,
   752 F. App'x 99 (2d Cir. 2019) ...............................................................19

*Domino's Pizza, Inc. v. McDonald*,
   546 U.S. 470 (2006) ...........................................................................11, 13

*Eugenio v. Walder*,
   2009 WL 1904526 (S.D.N.Y. July 2, 2009) ..............................................11

*Fenner v. News Corp.*,
   2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013) ..............................................12

*Ferris v. Lustgarten Foundation*,
   189 A.D.3d 1002 (2d Dep't 2020) ............................................................20

*Fincher v. Depository Tr. & Clearing Corp.*,
   604 F.3d 712 (2d Cir. 2010) ....................................................................10

*Flanagan v. Girl Scouts of Suffolk County, Inc.*,
   2023 WL 6594885 (E.D.N.Y. Aug. 25, 2023), *report and recommendation
   adopted as modified*, 2023 WL 6307362 (E.D.N.Y. Sept. 28, 2023) ..............21

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*,
   136 F.3d 276 (2d Cir. 1998) ....................................................................13

*Gates v. City of New York*,
   2021 WL 3774189 (S.D.N.Y. Aug. 25, 2021) ............................................13

*Grady v. BlueCrest Cap. Mgmt. LLP*,
   646 F. App'x 2 (2d Cir. 2016) ..................................................................22

*Gross v. New York Times Co.*,
   82 N.Y.2d 146 (1993) ..............................................................................24

*Hennrick v. Mir Scientific, LLC*,
   2021 WL 6052118 (S.D.N.Y. Dec. 21, 2021) ............................................17

*Herling v. N.Y.C. Dep't of Educ.*,
    2014 WL 1621966 (E.D.N.Y. Apr. 23, 2014) ...........................................................13

*Jewell v. NYP Holdings, Inc.*,
    23 F. Supp. 2d 348 (S.D.N.Y. 1998) .........................................................................25

*Joshi v. Trs. of Columbia Univ.*,
    515 F. Supp. 3d 200 (S.D.N.Y. 2021) ........................................................................20

*Kaye v. New York City Health & Hosps. Corp.*,
    2023 WL 2745556 (S.D.N.Y. Mar. 31, 2023) ...........................................................16

*Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*,
    716 F.3d 10 (2d Cir. 2013) .......................................................................................13

*Knight v. Standard Chartered Bank*,
    531 F. Supp. 3d 755 (S.D.N.Y. 2021) ......................................................................16

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) .....................................................................................10

*Lawrence v. Int'l Bus. Mach. Corp.*,
    2017 WL 3278917 (S.D.N.Y. Aug. 1, 2017) .............................................................18

*Leger v. Kalitta*,
    2018 WL 2057142 (E.D.N.Y. Jan. 26, 2018) ............................................................ 7

*Levin v. McPhee*,
    119 F.3d 189 (2d Cir. 1997) .....................................................................................24

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015) .............................................................................. 12, 14

*Lukashok v. Concerned Residents of N. Salem*,
    160 A.D.2d 685 (2d Dep't 1990) ..............................................................................24

*Lynch v. City of New York*,
    952 F.3d 67 (2d Cir. 2020) ...............................................................................3, 4, 8

*Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*,
    842 F.2d 590 (2d Cir. 1988) .....................................................................................12

*McLeod v. Post Graduate Ctr. for Mental Health*,
    2016 WL 6126014, at *2 (S.D.N.Y. Sept. 30, 2016), *report and
    recommendation adopted*, 2016 WL 6126383 (S.D.N.Y. Oct. 19, 2016) ...........................23

*McMenemy v. City of Rochester*,
    241 F.3d 279 (2d Cir. 2001) .....................................................................................10

*Nadel v. Shinseki,*
    57 F. Supp. 3d 288 (S.D.N.Y. 2014) .........................................................................15

*Nat'l Coal. on Black Civic Participation v. Wohl,*
    498 F. Supp. 3d 457 (S.D.N.Y. 2020).........................................................................24

*New York ex rel. Khurana v. Spherion Corp.,*
    511 F. Supp. 3d 455 (S.D.N.Y. 2021)................................................................... 18, 19

*O.F.I. Imports Inc. v. Gen. Elec. Cap. Corp.,*
    2017 WL 6734187 (S.D.N.Y. Dec. 29, 2017) ...........................................................22

*Ortiz v. Todres & Co., LLP,*
    2019 WL 1207856 (S.D.N.Y. Mar. 14, 2019) ..........................................................18

*Pisano v. Reynolds,*
    2023 WL 3601527 (Sup. Ct. N.Y. Cnty. May 23, 2023)..........................................21

*Porrazzo v. Bumble Bee Foods, LLC,*
    822 F. Supp. 2d 412 (S.D.N.Y. 2011)......................................................................... 7

*Quirk v. Katz,*
    2022 WL 4226124 (S.D.N.Y. Sept. 13, 2022) ..........................................................24

*Ramirez v. NYP Holdings, Inc.,*
    2020 WL 470011 (S.D.N.Y. Jan. 29, 2020) ..............................................................14

*Rodriguez v. Int'l Leadership Charter Sch.,*
    2009 WL 860622 (S.D.N.Y. Mar. 30, 2009)..............................................................11

*Rosen v Zionist Org. of Am.,*
    2023 WL 2711654 (Sup Ct N.Y. Cnty. Mar. 29, 2023) .............................................21

*Schnall v. Marine Midland Bank,*
    225 F.3d 263 (2d Cir. 2000) ........................................................................................ 9

*Stern v. State Univ. of New York,*
    2018 WL 4863588 (E.D.N.Y. Sept. 30, 2018).................................................... 13, 14

*Swanhart v. Jackson,*
    2023 WL 4534638 (S.D.N.Y. July 13, 2023) ...........................................................23

*Thacker v. HSBC Bank USA, N.A.,*
    2023 WL 3061336 (S.D.N.Y. Apr. 24, 2023)..................................................... 17, 19

*Thai v. Cayre Group, Ltd.,*
    726 F.Supp.2d 323 (S.D.N.Y. 2010) ........................................................................23

*Thomson v. Odyssey House*,
    652 F. App'x 44 (2d Cir. 2016) ............................................................................... 10

*Webb-Weber v. Cmty. Action for Hum. Servs., Inc.*,
    23 N.Y.3d 448 (2014) ........................................................................................... 17

*Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*,
    973 F. Supp. 2d 386 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 739 (2d Cir.
    2014) ...................................................................................................................... 14

*White v. Automatic Data Processing, Inc.*,
    2023 WL 3222397 (S.D.N.Y. May 3, 2023) ........................................................... 15

*Wimmer v. Suffolk Cnty. Police Dep't*,
    176 F.3d 125 (2d Cir. 1999) .................................................................................. 12

*Yak v. Bank Brussels Lambert*,
    252 F.3d 127 (2d Cir. 2001) .................................................................................... 9

*Yarde v. Good Samaritan Hosp.*,
    360 F. Supp. 2d 552 (S.D.N.Y. 2005) .................................................................... 15

**Statutes**

8 NYCCRR § 130.1 .................................................................................................... 18

9 U.S.C. § 3 ................................................................................................................. 3

9 U.S.C. § 4 ................................................................................................................. 3

42 U.S.C. § 1981 ................................................................................................. *passim*

Fed. R. Civ. P. 5.2 ...................................................................................................... 8

Fed. R. Civ. P. 12(b) .......................................................................................... 1, 3, 9

Labor Law § 740 ....................................................................................................... 16

N-PCL § 112(a)(7) ..................................................................................................... 21

N-PCL § 715-b ............................................................................... 6, 16, 17, 20, 21

N-PCL § 720-a ........................................................................................................... 21

N.Y. Civ. Rights Law § 76-a .................................................................................... 25

N.Y. Exec. L. § 296 ................................................................................................... 10

New York False Claims Act .............................................................. 1, 8, 16, 17, 18, 19

New York Human Rights Law ...................................................................................*passim*

New York Labor Law § 740......................................................................... 1, 6, 16, 17, 21

**Other Authorities**

5C Charles Alan Wright et al., Federal Practice & Procedure § 1360 (3d ed. 2004) ............................................................................................................... 3

Washington, George, "To John Trumbull, Mount Vernon, June 25, 1799," The Writings of George Washington from the Original Manuscript Sources (1908 Fitzpatrick, John C. ed.)........................................................ 8

## PRELIMINARY STATEMENT

Plaintiff, Sandra Betters, sought and accepted the position of President of Nardin Academy.  She failed miserably in that role.  While many within the Nardin community have differing opinions, the previous President was able to achieve cooperation and harmony.  Betters' disastrous tenure as Nardin's President was notable for unprecedented public discord and mass resignations, including protests by families, students, donors, faculty, and staff against Betters' continued employment.  (Compl. ¶¶ 250-51, 254, 256-58).  Nardin's entire Board of Trustees was replaced in an effort to quell the conflict Betters created.  (*Id.* ¶¶ 254, 256, 273-74).  After Betters reneged on her agreement to step down, a new Board elected to terminate her.  (*Id.* ¶¶ 269, 278, 280).

Betters has now filed a 328-paragraph complaint fueled by personal animus and filled with baseless allegations and social media rumors.  Her claims should be dismissed under Fed. R. Civ. P. 12(b)(6).  Although she brings five separate retaliation claims, Betters fails to identify any protected conduct.  The statutes she relies upon provide important protections for those who oppose race discrimination in contracting, 42 U.S.C. § 1981, unlawful employment practices under the New York Human Rights Law ("HRL"), fraud on the state under the New York False Claims Act ("FCA"), or illegal conduct under New York Labor Law ("Labor Law") § 740.  But Betters does not allege that she reported any such illegal conduct, much less identify what she reported to whom, or when.  Instead, she seeks to twist these laws by bringing claims based on disagreements over basic management decisions.  For example, she asserts that "the Board retaliated against her" by its "refusal to increase tuition" and "resistance to layoffs."  (Compl. ¶ 59).  These everyday business judgments are not the stuff of legitimate retaliation claims.

Betters also fails to allege facts suggesting causation.  By her own admission, Betters "angered parents and faculty members" with her abrasive "leadership style."  (*Id.* ¶ 285).  Nardin

families, students, faculty, and staff repeatedly protested against Betters' continued employment. (*Id.* ¶¶ 250-51, 257-58). Donors announced they would withhold financial support if Betters remained at the helm. (*Id.* ¶¶ 254, 256, 273). And the entire Board of Trustees was replaced in an effort to resolve the conflict over Betters' failed term. (*Id.* ¶ 274). A new Board terminated Betters only after these events—and after Betters agreed to leave the office of President—but refused to finalize the terms of her separation. (*Id.* ¶¶ 269, 278, 280). Betters offers no facts plausibly suggesting she was terminated in retaliation for protected activity rather than her own failures as a leader.

Betters has also asserted a contract claim demanding severance payments. But her contract with Nardin (the "Employment Agreement") requires such payments only if Betters entered into a severance agreement acceptable to Nardin. Because Betters refused to enter into such an agreement, (*id.* ¶¶ 278, 280-84), her contract claim fails as a matter of law.

Finally, Betters advances a defamation claim in a transparent attempt to deflect attention from her own misconduct. While serving as President, Betters sent an email from her Nardin account to defendant Patricia Lorence, who was teaching a class in which Betters' daughter was enrolled. The email was an unabashed effort to pressure Lorence[1] into changing a grade given to Betters' daughter. Lorence allegedly shared that email with faculty members and opined that Betters was attempting to pressure her into changing a grade. (*Id.* ¶¶ 210, 212). The Complaint alleges neither the defamatory words nor actual malice, and the opinion suggested is entirely supported by Betters' improper email.

---

[1] Although there are two defendants with the surname Lorence, this memorandum of law, filed on behalf of Patricia Lorence (and others), will refer to her as "Lorence."

Defendants Nardin, Marsha Sullivan, Charlie Chiampou, and Patricia Lorence ("Defendants") request an order dismissing this action with prejudice.[2]

## ALLEGATIONS AND INTEGRAL DOCUMENTS

### A.    Nardin hires Betters pursuant to a written Employment Agreement

Nardin is the oldest independent Catholic school in Western New York, founded in 1857 by the Society of the Daughters of the Heart of Mary (the "Daughters").  (Compl. ¶¶ 2, 28).  It operates four schools spanning grades pre-K through 12.  (*Id.* ¶¶ 29-30).  The Daughters' U.S. Provincial is Nardin's sole member.  (*Id.* ¶ 31).  Its operations are managed by a Board of Trustees.  (*Id.*).  Defendants Michael Lawley and Frank Ewing are former Board members. (Compl. ¶¶ 21-22).  Defendants Sullivan, Jacobs, and Chiampou are current Board members. (*Id.* ¶¶ 20, 23-24).  Lorence is former faculty member.  (*Id.* ¶ 25).  She and her husband are named as defendants.  (*Id.* ¶¶ 25-26).  Finally, defendant Therese Forton-Barnes is an alumnus of Nardin.  (*Id.* ¶ 27).

Nardin hired Betters as its President in June 2021.  (*Id.* ¶ 18).  Her Employment Agreement called for a three-year term beginning on July 1, 2021 and ending June 30, 2024, unless terminated earlier.  (Zarlock Dec. Ex. 1, at 2).[3]  She was paid an annual salary starting at $240,000 and increasing to $260,000.  (Zarlock Dec. Ex. 1, at 2).  Betters also received

---

[2] Immediately prior to filing this motion, Defendants filed a motion to compel arbitration and stay this action pursuant to 9 U.S.C. §§ 3 and 4.  "A motion to stay also is not within the ambit of the defenses enumerated in Rule 12(b)."  5C Charles Alan Wright et al., Federal Practice & Procedure § 1360 (3d ed. 2004).  Accordingly, Defendants are filing this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) to avoid any potential default.  Defendants expressly do not waive arbitration by taking this necessary step.

[3] Betters expressly references the Employment Agreement and relies upon it for her breach of contract claim.  (Compl. ¶¶ 14, 279-82, 284, 299-301).  Accordingly, it is properly considered on a motion to dismiss despite Betters' failure to attach it to her complaint.  *See Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020).

reimbursement for expenses, use of the Nardin House for a period of time, and generous employee benefits. (*Id.* at 3-4). The Employment Agreement provides that Nardin may terminate Betters without cause on thirty days' written notice. (*Id.* at 5). If terminated during her second year of employment, Betters would be entitled to a severance payment equal to one year of salary, but only "if Ms. Betters enters into an Agreement *acceptable to Nardin* that waives and releases any and all claims Ms. Betters may have against Nardin." (*Id.* (emphasis added)). The Employment Agreement is governed by New York law. (*Id.* at 8).

**B.    Betters' disastrous term as President prompts widespread dissension, and eventual termination**

Betters took over the position of President from Sullivan, who Betters acknowledges "is largely revered by the Nardin community." (*Id.* ¶ 36). As the complaint makes abundantly clear, Betters soon alienated the Nardin community and her tenure was marked by unprecedented conflict. The vast majority of the allegations concerning Betters' time at Nardin are unrelated to any cause of action, but made in an apparent effort to smear Nardin's reputation. These allegations include:

- A budget gap that Nardin intended to fill through fundraising efforts, (*id.* ¶¶ 41-48);

- Alleged diversity issues prior to Betters' employment, (*id.* ¶¶ 61-69);

- Nardin's decision to opt out of New York State's Regents curriculum and the status of various faculty members' credentials, (*id.* ¶¶ 76-81);

- Betters' experience relating to DEI initiatives, (*id.* ¶¶ 82-91, 126-63);

- Betters' access to administrative information, (*id.* ¶¶ 92-101, 105-09);

- The results of various student surveys, (*id.* ¶¶ 110-25);

- The Nardin accreditation process, (*id.* ¶¶ 172-79);

- Claimed issues with the number of faculty, student scheduling, school cell phone policy, and various administrators, (*id.* ¶¶ 180-98);

- Policies regarding the use of school email accounts, (*id.* ¶¶ 199-206);

- Faculty complaints regarding Betters' conduct, (*id.* ¶¶ 219-30);

- The suspension of a teacher, who was later terminated, relating to comments the teacher reportedly made regarding offensive words, (*id.* ¶¶ 234-42);[4] and

- Faculty, alumni, and student protests against Betters, (*id.* ¶¶ 250-64).

After devoting dozens of pages detailing her conflicts with faculty members, alumni, parents, and students, none of whom are parties to this action, Betters concedes that she "agreed to collaborate in a transition from her role as President" in May 2023. (*Id.* ¶ 269). At that time, nine members of the Board of Trustees who opposed Betters' continued employment were also asked to resign. (*Id.*). After this planned transition was announced, 71 Nardin families informed the Board of Trustees they would withhold tuition deposits if Trustees who supported Betters remained on the Board. (*Id.* ¶ 273).

On May 29, 2023, the Daughters replaced the entire Board, putting an end to Betters' disastrous tenure. (*Id.* ¶¶ 274-76). The new Board elected to terminate Betters without cause effective June 16, 2023. (*Id.* ¶¶ 278, 280). By that time, Betters had agreed to leave her position but refused to sign a severance agreement acceptable to Nardin. (*Id.* ¶¶ 278, 280).

---

[4] In one of the most egregious false statements contained in the complaint, Betters alleges that the teacher "asked the student how she would feel about being called a" vile racial slur that will not be repeated in this motion. (*Id.* ¶ 235). Despite Betters' repeated use of the actual slur in her complaint, and as Betters is well aware, no person claimed that the teacher uttered the slur itself. Instead, as the complaint implicitly admits, the allegation was that the teacher compared the use of "the R word" to the use of "the N word," using that phrase rather than the actual slur. (*Id.* ¶¶ 235 n.3, 237). Betters' use of inflammatory rhetoric of this sort is unfortunately repeated throughout the complaint in an apparent effort to garner media attention.

**C.     Betters offers only conclusory and legally insufficient allegations for her claims**

Betters asserts seven causes of action, which are more notable for what they do not allege than for what they do.  First, she claims that Nardin, Sullivan, Lawley, Ewing, Jacobs, and Chiampou retaliated against her because "she opposed discriminatory hiring practices prohibited under Section 1981."  (*Id.* ¶ 290).  Yet Betters does not identify a single instance of unlawful employment discrimination, or allege how she opposed it.  Nor does the complaint identify an impaired contractual relationship.

Second, Betters asserts a claim against Nardin under NPCL § 715-b, a statute that requires certain non-profit corporations to adopt a whistleblower policy.  Betters broadly alleges that Nardin retaliated against her "in response to Plaintiff's protected complaints and/or reports" but she does not identify what those claimed "complaints and/or reports" were, when they occurred, or to whom they were made.  (Compl. ¶ 296).  Presumably, Betters is referencing her conclusory allegation that she "raised concerns about" Nardin's spending and that the Board "retaliated against her" by making ordinary operations decisions such as refusing to "increase tuition," or engage in "layoffs that would put Nardin in line with other private schools."  (*Id.* ¶ 59).

Third, Betters alleges that Nardin breached the "Employment Agreement by failing to pay Dr. Betters the severance to which she is entitled upon a termination without cause."  (*Id.* ¶ 299).  Betters, however, does not allege that she "enter[ed] into an Agreement acceptable to Nardin that waives and releases any and all claims Ms. Betters may have against Nardin," an express condition to her entitlement to a severance payment.  (Zarlock Dec. Ex. 1, at 2).

Fourth, for Betters' proposed claim against Nardin under Labor Law § 740, she states only that she "disclosed her reasonable belief [of a violation] to those with authority to

investigate, discover or terminate the misconduct on multiple occasions." (Compl. ¶ 305). She does not identify who those authorities were, when she made her disclosures, or what she disclosed. Betters alleges only that her beliefs related to the Nardin school calendar, the use of PPP funds, and a "tax scheme." (*Id.* ¶ 304).

As to the school calendar, Betters alleges that Nardin "engaged in fraudulent reporting concerning the number of days of instruction." (*Id.* ¶ 74). Betters offers the legal conclusion that Nardin was obligated to provide 180 days of instruction to receive full state funding. (*Id.* ¶¶ 73, 170). In fact, the State Education Department website explains that a nonpublic school "need not be in session for the 180 days required for a public school district to receive its full State aid."[5] Betters does not allege that she identified this issue to the Board or reported unlawful conduct. Instead, she claims that she spoke to a subordinate "about the importance of increasing the number of school days." (Compl. ¶ 168).

Similarly, Betters does not allege that she identified any legal issue regarding PPP loans to the Board at any particular time. Instead, she alleges that someone else, Nardin's CFO, reported that PPP loans had been used to fund "capitol [sic] projects" prior to Betters joining Nardin. (*Id.* ¶ 102). Betters offers only the conclusory allegation that she "openly protested" the use of PPP funds at unidentified times to unidentified persons. (*Id.* ¶ 104).

---

[5] https://www.p12.nysed.gov/nonpub/manualfornewadministratorsofnps/statereqs.html. A court may "take judicial notice of documents retrieved from official government websites or other government records from such websites." *Leger v. Kalitta*, 2018 WL 2057142, at *3 (E.D.N.Y. Jan. 26, 2018); *see also Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 412 (S.D.N.Y. 2011) (taking judicial notice on motion to dismiss of a document "publicly available on the FDA website"); *Becker v. Cephalon, Inc.*, 2015 WL 5472311, at *3 (S.D.N.Y. Sept. 15, 2015) (same); *In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.*, 701 F.Supp.2d 356, 367-68 (E.D.N.Y.2010) (taking judicial notice of portions of FDA website).

Betters also refers to the donation of "a sports field and indoor athletic center" to Nardin as a "tax scheme."  (*Id.* ¶¶ 53, 304).  Betters does not allege any details or that she made any complaints or reports about it.  (*Id.* ¶¶ 50-55).  Instead, she alleges that the transaction occurred around 2015, "long before Dr. Betters arrived" at Nardin.  (*Id.* ¶¶ 50, 55).

Fifth, Betters alleges that Nardin violated the FCA by reporting to the State "that students attend a minimum of 180 days each school year."  (*Id.* ¶ 311).  Again, she ignores the fact that 180 days are not required for nonpublic schools.  And she did not complain of illegality, but instead spoke with a subordinate about extending the calendar.  (*Id.* ¶ 168).

Sixth, Betters asserts a claim under HRL against Nardin, Sullivan, Jacobs, and Chiampou, who she claims retaliated against her "because she opposed discriminatory hiring practices prohibited under the HRL."  (Compl. ¶ 319).  As with her § 1981 claim, Betters does not allege a single instance of unlawful employment discrimination, or identify what she did to oppose the unidentified discrimination.

Finally, Betters asserts a defamation claim against Lorence and two other defendants, in an attempt to defuse a blatantly improper email Betters sent to Lorence.[6]  (Zarlock Dec. Ex. 2).[7]  Betters, who was Lorence's superior at the time, sent the message from her Nardin account.  (*Id.*).  She stated that her daughter "inadvertently completed the wrong [vocabulary] list, which in the end still resulted in her learning new vocabulary, but lost credit when this happened."

---

[6] The notion that "the best defense is a good offense" has been originally attributed to George Washington, who in 1799 wrote, "offensive operations, often times, is the surest, if not the only (in some cases) means of defense."  Washington, George, "To John Trumbull, Mount Vernon, June 25, 1799," The Writings of George Washington from the Original Manuscript Sources (1908 Fitzpatrick, John C. ed.).

[7] This document is also referenced in, and integral to, the complaint and accordingly may be considered on a motion to dismiss.  *See Lynch*, 952 F.3d at 79.  Pursuant to Fed. R. Civ. P. 5.2(a), certain details in this email are redacted.  An unredacted copy is submitted under seal.  *See* Fed. R. Civ. P. 5.2(d).

(*Id.*).  Betters "was surprised to learn that a student, who completed her work, was not given the opportunity to correct the error without penalty."  (*Id.*).  Betters expressed her "wish" to her subordinate that her daughter "see [her] peers and mentors as women who will support healthy decisions and can trust that when those decisions are made, along with responsible communications, *she will not be penalized but rather supported and encouraged* to continue these behaviors throughout life."  (*Id.*) (emphasis added).

The complaint does not set forth any defamatory statement.  It merely alleges that Lorence forwarded Betters' unethical email to other faculty members and described it as an attempt to pressure her into changing Betters' daughter's grade.  (*Id.* ¶¶ 208-10, 212).  The complaint states that Lorence advanced this opinion "on social media" and "published numerous false statements online" but does not identify what these false statements were, when they were made, or to whom.  (*Id.* ¶¶ 212, 324).

## ARGUMENT

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must assert sufficiently detailed factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Mere "labels and conclusions," "formulaic recitation[s] of the elements," and "naked assertions" devoid of "further factual enhancement" are insufficient.  *Twombly*, 550 U.S. at 555, 557.

On a Rule 12(b)(6) motion, the Court may consider documents and matters integral to Plaintiff's claims.  *See*, *e.g.*, *Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000); *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130-31 (2d Cir. 2001).  If a conclusory allegation is contradicted by a document, "the document controls and the allegation is not accepted as true."

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).  The same is true if

a conclusory allegation is "contradicted by more specific allegations."  *L-7 Designs, Inc. v. Old*

*Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

## POINT I

### BETTERS FAILS TO STATE A CLAIM UNDER § 1981 OR THE HRL

Section 1981 provides a cause of action for "retaliation against a person who has

complained about a violation of another person's contract-related 'right.'"  *CBOCS W., Inc. v.*

*Humphries*, 553 U.S. 442, 445 (2008).  Retaliation claims under § 1981 are evaluated "like those

made under Title VII."  *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir.

2010).  To make out a prima facie case of retaliation under § 1981, a plaintiff must allege: "(1)

that she engaged in a protected activity; (2) defendant was aware of that activity; (3) she suffered

an adverse employment action; and (4) there was sufficient causal connection between the

protected activity and the adverse employment action."  *Thomson v. Odyssey House*, 652 F.

App'x 44, 46 (2d Cir. 2016); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir.

2000), *superseded by statute on other grounds*, N.Y.C. Local Law No. 85.

Courts evaluate retaliation claims under the HRL, N.Y. Exec. L. § 296, under the same

standards.  *McMenemy v. City of Rochester*, 241 F.3d 279, 283 n.1 (2d Cir. 2001).  That statute

makes it unlawful for an employer to retaliate against an employee "because he or she has

opposed any practices forbidden under this article."  N.Y. Exec. Law § 296(e).  The "practices

forbidden" refer to employment discrimination on the basis of a number of protected

characteristics.  § 296(1)(a).  As with § 1981, retaliation claims under the HRL are evaluated

under the Title VII framework.  *McMenemy*, 241 F.3d at 283 n.1.

**A.      Betters does not allege conduct protected by § 1981 or the HRL**

Section 1981 applies only to racial discrimination in contracting.  "[N]othing in the text of § 1981 suggests that it was meant to provide an omnibus remedy for *all* racial injustice.  If so, it would not have been limited to situations involving contracts."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479 (2006) (emphasis in original).  Yet Betters does not allege that she "complained about a violation of another person's contract-related 'right.'"  *CBOCS W., Inc.*, 553 U.S. at 445.  This threshold failure requires dismissal.

The law is well-settled that "[a]ny claim brought under § 1981 must initially identify an impaired contractual relationship."  *Eugenio v. Walder*, 2009 WL 1904526, at *13 (S.D.N.Y. July 2, 2009) (quoting *Domino's*, 546 U.S. at 476).  "Where a plaintiff's allegations do not 'encompass[ ] a complaint of retaliation against a person who has complained about a violation of another person's contract-related "right,"' the plaintiff's claim should be dismissed."  *Rodriguez v. Int'l Leadership Charter Sch.*, 2009 WL 860622, at *6 (S.D.N.Y. Mar. 30, 2009) (quoting *CBOCS W.*, 553 U.S. at 445); *see also Eugenio*, 2009 WL 1904526, at *13; *Blythe v. City of New York*, 963 F. Supp. 2d 158, 176-77 (E.D.N.Y. 2013).

Betters does not identify any individual whose contractual rights were impaired on the basis of race.  Without such allegations, her § 1981 claim must be dismissed.  General complaints regarding the lack of diversity in a school setting are plainly insufficient.  *See Rodriguez*, 2009 WL 860622, at *6 (dismissing claim because plaintiff did "not allege that Defendants violated her students' contract-related rights because of the students' race or national origin"); *Eugenio*, 2009 WL 1904526, at *13 (statements regarding discrimination at school did not qualify as protected activity because the alleged discrimination "did not impair such students' rights to enter into contracts or rights under any existing contractual relationships"); *Blythe*, 963 F. Supp. 2d at 177 (plaintiff's statements were not protected activity because plaintiff

did not allege "she complained that any disparate treatment infringed students' or parents'
contract rights based on race").

Nor has Betters identified any instance of unlawful employment discrimination. *See
Butler v. City Sch. Dist. of New Rochelle*, 2020 WL 6639121, at \*2 (S.D.N.Y. Nov. 12, 2020)
(activity was "not directed at an unlawful employment practice, and does not constitute protected
activity under either Title VII or Section 1981."); *Wimmer v. Suffolk Cnty. Police Dep't*, 176
F.3d 125, 135 (2d Cir. 1999) (holding a "claim of retaliation is not cognizable under Title VII
[and thus the HRL] because [plaintiff's] opposition was not directed at an unlawful employment
practice" (emphasis omitted)).

Betters makes vague allusions to the lack of diversity among faculty prior to her tenure.
(*See* Compl. ¶¶ 151-53).  But she does not identify any instance of discrimination that she
complained of.  *See Cruz*, 202 F.3d at 566 ("The term protected activity refers to action taken to
protest or oppose statutorily prohibited discrimination.").  A complaint generally about "a lack of
diversity" is insufficient to put an employer "on notice that [an employee] was complaining
about an employment policy that he reasonably believed to be discriminatory" because "lack of
diversity alone is not actionable." *Fenner v. News Corp.*, 2013 WL 6244156, at \*25 (S.D.N.Y.
Dec. 2, 2013); *see also Cooper v. New York State Dep't of Lab.*, 819 F.3d 678, 681 (2d Cir.
2016) ("[O]pposing an employer's failure to engage in affirmative action is nevertheless
unprotected under the statute."); *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*,
842 F.2d 590, 594 (2d Cir. 1988) ("[A]n employer's failure to follow its own voluntary
affirmative action program cannot, by itself, constitute an unlawful employment practice . . . .").

## B.    **Betters does not allege that the Defendants were aware of any protected activity**

A plaintiff must allege that "the defendant knew of the protected activity." *Littlejohn v.
City of New York*, 795 F.3d 297, 302 (2d Cir. 2015).  "[I]mplicit in the requirement that the

employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by" the statute at issue. *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). Comments are insufficient "if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory." *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013).

Betters does not identify any reports she made that would have put Nardin on notice that she was opposing some action prohibited by § 1981 or the HRL. As described above, those statutes are limited to discrimination in contracting and employment. *Domino's Pizza, Inc.*, 546 U.S. at 479. Betters fails to allege that she was opposing unlawful racial discrimination related to anyone's employment or contractual rights. Generalized allegations that do not identify to whom a plaintiff complained, when they did so, or what they said are insufficient. *See Herling v. N.Y.C. Dep't of Educ.*, 2014 WL 1621966, at *9 (E.D.N.Y. Apr. 23, 2014) (allegations were "too vague and conclusory to constitute protected activity as [plaintiff] fails to specify when he lodged these complaints, who he complained to, and whether [his supervisor] knew about these complaints"); *see also Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, 2015 WL 13654007, at *15 (S.D.N.Y. Mar. 26, 2015) (plaintiff failed to state a claim because "she does not allege to whom she complained or when these complaints were made").

Nor does Betters allege facts indicating that the individual defendants were put on notice of protected activity. A "plaintiff must ordinarily plead that the defendant had knowledge of the protected activity." *Stern v. State Univ. of New York*, 2018 WL 4863588, at *18 (E.D.N.Y. Sept. 30, 2018); *see also Gates v. City of New York*, 2021 WL 3774189, at *12 (S.D.N.Y. Aug. 25, 2021). Accordingly, a plaintiff must make factual allegations "plausibly suggesting that [the

individual defendant] himself was aware of" the protected activity. *Stern*, 2018 WL 4863588, at
*18. Although Betters asserts retaliation claims against Sullivan, Lawley, Ewing, Jacobs, and
Chiampou, she does not allege that she made any objections regarding unlawful employment
practices to these individuals or any facts indicating that any protected activity was relayed to
them indirectly. Accordingly, Betters' § 1981 and HRL retaliation claims against the individual
defendants, as with her claims against Nardin, fail as a matter of law.

## C. Betters does not allege facts suggesting a causal connection between protected activity and an adverse employment action

"To state a claim for retaliation, a plaintiff must plead facts that demonstrate . . . a causal
connection between the protected activity and the adverse employment action." *Dasrath v. Stony
Brook Univ. Med. Ctr.*, 2014 WL 1760907, at *5 (E.D.N.Y. Apr. 29, 2014) (quotation omitted).
"A plaintiff can allege a causal connection either '[i] indirectly, by showing that the protected
activity was followed closely by discriminatory treatment . . . ; or [ii] directly, through evidence
of retaliatory animus directed against the plaintiff by the defendant.'" *Ramirez v. NYP Holdings,
Inc.*, 2020 WL 470011, at *10 (S.D.N.Y. Jan. 29, 2020) (quoting *Littlejohn*, 795 F.3d at 319).
Betters has done neither.

First, Betters does not allege incidents of direct animus. Such "direct evidence" refers to
"statements or documents that reflect or suggest that there was a causal relationship between the
[adverse] decision and the prior complaint of discrimination." *Wesley-Dickson v. Warwick
Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 408 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 739 (2d
Cir. 2014). Betters does not identify any such statements or documents.

Second, the complaint does not allege temporal proximity. Betters states that she was
terminated effective June 16, 2023. (Compl. ¶ 278). "[C]ourts frequently dismiss retaliation
claims at the pleading stage where there is a temporal gap and the allegations do not otherwise

support an inference of causation." *White v. Automatic Data Processing, Inc.*, 2023 WL 3222397, at *4 (S.D.N.Y. May 3, 2023).  Although there is no bright-line test for temporal proximity, "courts in this Circuit have often found that a temporal gap of approximately three months between the protected activity and the adverse action, without more, prohibits an inference of causation." *Id.* (quoting *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 299 (S.D.N.Y. 2014).  The complaint is devoid of allegations identifying any activity protected under § 1981 or the HRL between April and June of 2023.[8]

The complaint does, however, identify significant intervening events unrelated to protected activity that defeat any plausible theory of causation.  *See Dasrath*, 2014 WL 1760907, at *5 (holding an "inference of retaliation . . . was defeated by the significant intervening events between" protected conduct and an adverse employment action (quotation omitted); *see also Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005).  The complaint alleges that "Betters agreed to collaborate in a transition from her role as President" in May 2023.  (Compl. ¶ 269).  Shortly after Betters agreed to leave her position, "71 Nardin families sent a letter to the Board threatening to withhold tuition deposits if Dr. Betters' supporters remained on the Board."  (*Id.* ¶ 273).  The Daughters then "announced that it had made the decision to remove the entire Board of Trustees" on May 29, 2023.  (*Id.* ¶ 274).  A new Board then made the decision to terminate Betters.  (*Id.* ¶ 278).  Betters concedes that she was

---

[8] The only adverse employment action specifically alleged in the complaint is Betters' termination.  (*See* Compl. ¶¶ 290, 319).  In the retaliation context, a plaintiff must show a "materially adverse" action, which "is one that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Carr v. New York City Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023) (quoting  *Burlington Northern & Santa Fe Railway Company v. White*, 548 U.S. 53, 69 (2006)).  Betters includes only the conclusory allegation that six defendants retaliated by "actively interfering with her personal and professional relationships [and] defaming her by spreading lies about her."  (*Id.*).  But Betters does not identify what these purported incidents were, who committed them, or when they occurred.

negotiating a separation agreement at the time and refused to sign a version acceptable to Nardin. (*Id.* ¶¶ 278, 280).

Even if Betters had identified protected conduct, any inference of causation is untenable. The new Board's decision was plainly motivated by a desire to move on from Betters' disastrous tenure and serve the interests of parents and students, not retaliatory animus.[9] Betters' § 1981 and HRL retaliation claims fail as a matter of law.[10]

## POINT II

### BETTERS FAILS TO STATE A CLAIM FOR WHISTLEBLOWER RETALIATION UNDER ANY OF THE THREE STATUTES SHE RELIES UPON

Betters asserts three overlapping claims of whistleblower retaliation under NPCL § 715-b, Labor Law § 740, and the FCA.  (*Compare* Compl. ¶¶ 293-97, *id.* ¶¶ 309-16, *and id.* ¶¶ 317-22).  All three claims fail because Betters does not plausibly allege that she engaged in protected activity known to Nardin, or identify facts suggesting causation.  Her claim under § 715-b also fails because that statute does not provide her a private right of action, and includes a safe harbor that governs here.

### A.     Betters' whistleblower retaliation claims fail as a matter of law

Betters has not stated a claim for retaliation under § 715-b, § 740, or the FCA for largely the same reasons that her § 1981 and HRL claims fail.  *See Kaye v. New York City Health & Hosps. Corp.*, 2023 WL 2745556, at *22-23 (S.D.N.Y. Mar. 31, 2023) (state-law retaliation claims under § 740 share common elements with Title VII and HRL claims); *Knight v. Standard*

---

[9] Defendants Sullivan and Chiampou also join in and incorporate the argument by Defendant Jacobs regarding a lack of personal participation.

[10] For the same reasons, the defects identified in this section would also bar any Title VII retaliation claim Betters intends to assert.  (*See* Compl. ¶ 15).  *See Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 447 (W.D.N.Y. 2021).

*Chartered Bank*, 531 F. Supp. 3d 755, 768 n.4 (S.D.N.Y. 2021) (New York FCA follows the

federal False Claims Act); *Hennrick v. Mir Scientific, LLC*, 2021 WL 6052118, at *3 (S.D.N.Y.

Dec. 21, 2021) (Title VII framework applies to FCA claims).[11]

      To state a retaliation claim, a complaint "must identify the particular activities, policies or

practices in which the employer allegedly engaged, so that the complaint provides the employer

with notice of the alleged complained-of conduct." *Webb-Weber v. Cmty. Action for Hum.*

*Servs., Inc.*, 23 N.Y.3d 448, 453 (2014), *superseded on other grounds as stated in Zhang v.*

*Centene Mgmt. Co., LLC*, 2023 WL 2969309, at *13 (E.D.N.Y. Feb. 2, 2023).  As explained in

*Thacker v. HSBC Bank USA, N.A.*, 2023 WL 3061336 (S.D.N.Y. Apr. 24, 2023), a whistleblower

plaintiff must "adequately articulate[] what she said" for the court to determine whether "she

informed [the employer] that she believed [the challenged practices] were *illegal*." *Id.* at *8

(emphasis in original).

      The complaint provides legal conclusions, but no facts indicating what Betters actually

reported.  In her § 715-b claim, Betters simply refers to "protected complaints and/or reports."

(Compl. ¶ 296).  In her § 740 claim, she identifies three topics: the Nardin academic calendar,

the use of PPP loans, and the donation of a sports field.  (Compl. ¶ 304).  Betters' FCA claim

rests solely on the school calendar.  (*Id.* ¶ 311).  But Betters does not allege protected conduct

sufficient to provide notice to Nardin for any of these topics.

      Betters concedes that she does not know how many days Nardin reported to the State.

(*Id.* ¶ 169).  She asserts that Nardin was obligated to provide 180 days of instruction to receive

---

[11] As described below, § 715-b does not provide Betters a private right of action.  However, if
the statute did permit a cause of action, it would require protected activity that causes an adverse
employment action.  *See* N.Y. NPCL § 715-b(a) (requiring an "adverse employment
consequence" due to reporting of illegal activity).

full state funding.  (*Id.* ¶¶ 73, 170).  But this was not a reasonable belief.  *See New York ex rel. Khurana v. Spherion Corp.*, 511 F. Supp. 3d 455, 473 (S.D.N.Y. 2021) (requiring an objectively reasonable basis for FCA claim) (citing cases).  While Betters touts her credentials as an educational administrator (Compl. ¶¶ 82-84), the State Education Department's website specifically states:  "The nonpublic school's calendar should approximate that of the public school, but it need not be in session for the 180 days required for a public school district to receive its full State aid."[12]  *See also* 8 NYCCRR § 130.1 *et seq.* (substantial equivalency standard).

Further, Betters did not complain that Nardin engaged in any unlawful activity related to the calendar.  Instead, she spoke with a subordinate "about the importance of increasing the number of school days."  (*Id.* ¶ 168).  This comment would not put Nardin on notice that she was complaining of fraud or illegality.  In fact, Betters' comments regarding the number of school days was "wholly consistent with [her] job description" and thus did not "provide notice that [she was] engaging in a protected activity."  *Ortiz v. Todres & Co., LLP*, 2019 WL 1207856, at *5 (S.D.N.Y. Mar. 14, 2019); *see also Lawrence v. Int'l Bus. Mach. Corp.*, 2017 WL 3278917, at *6 (S.D.N.Y. Aug. 1, 2017) (holding "problems are not actionable under the FCA in the absence of actual fraudulent conduct").

Nor did Betters report any illegality regarding PPP loans.  She claims that a different person reported PPP loans were used to fund "capitol [sic] projects" before Betters was hired. (*Id.* ¶ 102).  Betters claims that she "openly protested" this use of PPP funds, but does not explain how she did so given that the alleged incident occurred before she joined Nardin.  (*Id.* ¶ 104).  At no point does the complaint "articulate[] what she said" or allege that "she informed

---

[12] https://www.p12.nysed.gov/nonpub/manualfornewadministratorsofnps/statereqs.html.

[the employer] that she believed [the challenged practices] were *illegal*."  *Thacker*, 2023 WL 3061336, at *8 (emphasis in original); *see also Dhaliwal v. Salix Pharms., Ltd.*, 752 F. App'x 99, 101 (2d Cir. 2019) (rejecting FCA claim because comments did not put defendant "on notice that [plaintiff] engaged in activity the FCA protects").

The same is true of Betters' allegations regarding the donation of a sports field, which she mischaracterizes as a "tax scheme."  (Compl. ¶¶ 53, 304).  Betters specifically states this transaction occurred in approximately 2015, "long before Dr. Betters arrived."  (*Id.* ¶¶ 50, 55).  And despite spending several paragraphs of her complaint misdescribing this donation, Betters does not claim to have made any reports about it to anyone.  (*Id.* ¶¶ 50-55).

Further, Betters does not allege facts permitting an inference of causation.  For all of her retaliation claims, she must, but fails to, allege facts plausibly suggesting that protected activity was the "but-for" cause of her termination.  *See Spherion Corp.*, 511 F. Supp. 3d at 479-80 (citing cases).  She does not allege any direct instances of retaliatory animus and fails to identify protected activity near in time to an adverse employment action.  *See Thacker*, 2023 WL 3061336, at *7 (holding complaint failed to plausibly allege causal inference because plaintiff made allegations "without specifying a date on which they occurred").  Again, the sole adverse employment action Betters identifies is her termination.[13]  Yet Betters does not claim to have complained about unlawful conduct near in time to her June 2023 termination.  (Compl. ¶ 278).

---

[13] Betters also claims that the Board "retaliated against her" by refusing to "increase tuition," "authorize the replacement of the Academy's Chief Financial Officer and Upper School principal," or engage in "layoffs."  (Compl. ¶ 59).  These ordinary operations decision fall well short of conduct that would chill an ordinary employee from making complaints.  *See Carr*, 76 F.4th at 180.  Betters also references harassment, but appears to be referring to actions taken by subordinate co-workers or parents rather than Nardin.  That alleged conduct is immaterial.  *See Thacker*, 2023 WL 3061336, at *8 n.10 ("Several of these allegations are not actionable for the additional reason that they do not allege that an 'employer'—as opposed to a co-worker—took 'retaliatory action' against [plaintiff].").

She provides no details regarding the timing of her conversations regarding the school calendar. (*Id.* ¶¶ 169-70).  The PPP funding occurred before she was hired in June 2021.  (*Id.* ¶¶ 18, 102). And the sports facility was donated in 2015.  (*Id.* ¶ 50).  Because Betters has not identified protected activity, notice to Nardin, or facts plausibly suggesting causation, her whistleblower retaliation claims fail.

## B.   Betters does not have a private right of action under § 715-b and Betters has not alleged a violation of its terms

For her § 715-b claim, Betters does not plausibly allege that she engaged in protected activity known to Nardin, or identify facts suggesting causation.  In addition, Betters does not even allege that Nardin violated the statute.  That statute provides a corporation is in compliance if it "has adopted and possesses a whistleblower policy pursuant to federal, state or local laws that is substantially consistent with the provisions of paragraph (b)."  NPCL § 715-b(c).  Yet the complaint fails to allege that Nardin lacks such a policy.  Instead, it alleges that "Nardin *either does not have a policy compliant with §715-b or has a written policy that is compliant but does not follow such policy in practice*."  (Compl. ¶ 295 (emphases added)).  Even accepting Betters' conclusory allegation, she fails to state a claim by merely alleging that Nardin "does not follow" its whistleblower policy.  Under § 715-b(c), Nardin "shall be deemed in compliance" if that were true.

Moreover, Betters' § 715-b claim must be dismissed regardless of whether Nardin had a whistleblower policy.  While there is some authority for the position that § 715-b provides a private right of action for employees of a not-for-profit corporation (*see, e.g., Joshi v. Trs. of Columbia Univ.*, 515 F. Supp. 3d 200, 224 (S.D.N.Y. 2021); *Ferris v. Lustgarten Foundation*,

189 A.D.3d 1002, 1006 (2d Dep't 2020),[14] that privilege does not extend to officers of a not-for-profit corporation. "Because N-PCL § 112(a)(7) provides for the Attorney General's protection of the right of officers of a not-for-profit organization, allowing . . . an officer, a private right of action under N-PCL § 715-b would be inconsistent with the legislative scheme." *Rosen v Zionist Org. of Am.*, 2023 WL 2711654, at *3 (Sup Ct. N.Y. Cnty. Mar. 29, 2023) (finding that an Executive Vice President of defendant did not have a private right of action under NPCL § 715(b) because the Attorney General is empowered to protect such a corporation's officers); *see also Pisano v. Reynolds*, 2023 WL 3601527, at *4 (Sup. Ct. N.Y. Cnty. May 23, 2023) ("Here, plaintiff was, according to the amended complaint, Woodlawn's CFO, Treasurer and Vice President . . . and so he does not have a private right of action under N-PCL § 715(b)"); *Flanagan v. Girl Scouts of Suffolk County, Inc.*, 2023 WL 6594885, at *8-9 (E.D.N.Y. Aug. 25, 2023) ("Since all Plaintiffs are alleged to be officers of the GSSC, the undersigned respectfully recommends that Plaintiffs' claim pursuant to Section 715-b of the New York Not-for-Profit Law be dismissed with prejudice."), r*eport and recommendation adopted as modified*, 2023 WL 6307362 (E.D.N.Y. Sept. 28, 2023).[15]

---

[14] While Betters has failed to plead a claim under NPCL § 715-b for a variety of other reasons, the cases finding a private right of action appear to be wrongly decided. The statute does not expressly create a private right of action and thus Betters can pursue a claim for damages "only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history." *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 70 (2013) (quotation omitted). The key question is "whether creation of such a right would be consistent with the legislative scheme." *Id.* (quotation omitted). The Legislature has expressly provided for a private whistleblower cause of action within carefully circumscribed limits under a different provision, Labor Law § 740(4). It generally requires that an employee notify the employer and provide a cure period before making a public report. § 740(3). And it limits recovery to back pay, costs, and fees. § 740(5)(d)(e). Betters' reading of § 715-b would provide the same cause of action for the same alleged retaliation without regard for the Legislature's decision to impose reasonable limits.

[15] Defendants Sullivan and Chiampou also join in and incorporate the argument by Defendant Jacobs regarding immunity under NPCL §720-a.

## POINT III

**BETTERS FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT**

Because Betters affirmatively alleges that she did not satisfy a condition precedent, her breach of contract claim fails.  The Employment Agreement unambiguously imposes a condition precedent to any severance obligation.  It states that such payments are required only "if Ms. Betters enters into an Agreement acceptable to Nardin that waives and releases any and all claims Ms. Betters may have against Nardin." (Zarlock Dec. Ex. 1, at 5).  Betters did not enter into an agreement acceptable to Nardin.  (Compl. ¶¶ 278, 280-84).  Her contract claim thus fails. *See O.F.I. Imports Inc. v. Gen. Elec. Cap. Corp.,* 2017 WL 6734187 at *3 (S.D.N.Y. Dec. 29, 2017) (dismissing action with prejudice and denying motion to amend because the contract required a release "in form and substance acceptable to agent" and an acceptable release was not provided); *O;Grady v. BlueCrest Cap. Mgmt. LLP*, 646 F. App'x 2, 5 (2d Cir. 2016) (affirming dismissal because the plaintiff did not allege "that he executed 'a valid and irrevocable release agreement in a form acceptable to the Company,' . . . a condition precedent to [defendant]s severance obligation under the Agreement").

Betters attempts to rewrite the Employment Agreement to require severance if she waived claims against Nardin in an agreement she found acceptable.  That is not what the Employment Agreement provides.  She was entitled to a payment only if she "enters into an Agreement acceptable to Nardin."  (Zarlock Dec. Ex. 1, at 5).  The Employment Agreement requires, therefore, that Betters execute the release that Nardin provided. *See O.F.I  Imports Inc.*, 2017 WL 6734187, at *5 n.3 (although agreement could have been "more explicit by using the phrase 'sole discretion,' the Court does not perceive a significant difference between that term

- 22 -

and the provision as drafted, which provides that the release must be in 'form and substance acceptable to [defendant].'").[16]

## POINT IV

### BETTERS FAILS TO STATE A CLAIM FOR DEFAMATION

Betters asserts a defamation claim against Lorence.  This claim fails because Betters has not identified the speech at issue, Lorence's alleged comments concerned a matter of opinion, the statements were not false, and Betters did not allege any facts demonstrating actual malice.

Initially, Betters' defamation claim fails *ab initio* because she does not identify the allegedly defamatory statements.  "A defamation claim is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated."  *Thai v. Cayre Group, Ltd.*, 726 F.Supp.2d 323, 329 (S.D.N.Y. 2010); *see also Swanhart v. Jackson*, 2023 WL 4534638, at *13 (S.D.N.Y. July 13, 2023) (same).  The complaint merely alleges that Lorence opined that an email was an attempt to pressure her into changing a grade issued to Betters' daughter.  (Compl. ¶¶ 210, 212).  The complaint generally states that this occurred "on social media."  (*Id.* ¶ 212).  Without the requisite information regarding what Lorence is alleged to have said, when, and to whom, Betters' defamation claim cannot proceed.

---

[16] Indeed, Betters' disagreement with certain standard terms that would make the agreement acceptable to Nardin, including a waiver applicable to affiliates, a confidentiality provision, and a non-disparagement provision, is plainly untenable.  (Compl. ¶¶ 281-83).  Those are standard terms typically included in agreements that terminate an employment relationship. *See, e.g.*, *McLeod v. Post Graduate Ctr. for Mental Health*, 2016 WL 6126014, at *2 (S.D.N.Y. Sept. 30, 2016), *report and recommendation adopted*, 2016 WL 6126383 (S.D.N.Y. Oct. 19, 2016). Nardin's insistence that these typical clauses be included was its right under the Employment Agreement.

Further, even with the limited information offered in the complaint, Lorence, at most, expressed her opinion that the email was an attempt to pressure her.   Statements of opinion are not actionable. *See Gross v. New York Times Co.*, 82 N.Y.2d 146, 151 (1993).  Whether a statement is one of fact or opinion "is a matter for the court." *Levin v. McPhee*, 119 F.3d 189 (2d Cir. 1997).  Statements regarding the perceived intent of a plaintiff are not actionable.  "Imputing a motive or state of mind to a person based on that person's publicly reported conduct is not actionable in defamation" because "inherently subjective evaluations of intent and state of mind . . . are matters not readily verifiable and intrinsically unsuitable as a foundation for defamation." *Cummings v. City of New York*, 2020 WL 882335, at *22 (S.D.N.Y. Feb. 24, 2020); *see also Quirk v. Katz*, 2022 WL 4226124, at *10 (S.D.N.Y. Sept. 13, 2022).  Reporting that a plaintiff is seeking to intimidate is plainly a matter of opinion.  *See Lukashok v. Concerned Residents of N. Salem*, 160 A.D.2d 685, 686 (2d Dep't 1990) (statement that plaintiffs sought "to intimidate members of the Town Board" was non-actionable opinion).

To the extent that Lorence's "statements" could be deemed to concern facts, they are supported by the email.  Betters emailed a subordinate from her Nardin email account complaining that her daughter "lost credit" when she "inadvertently completed the wrong [vocabulary] list." (Zarlock Dec. Ex. 2).  Betters states that she "was surprised to learn that a student, who completed her work, was not given the opportunity to correct the error without penalty" and expressed her "wish" that her daughter "will not be penalized." (*Id.*).  A superior's expression of "surprise" that a penalty was imposed and a "wish" that her daughter "not be penalized" was a thinly disguised attempt to apply pressure.[17]

---

[17] Courts have recognized in a variety of contexts that intimidation may be conducted subtly. *See, e.g., Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 485 (S.D.N.Y. 2020).  The thrust of Betters' email was her wrongful effort to pressure Lorence into changing a

Finally, Betters' defamation claim fails because she has not alleged facts sufficient to support a finding of actual malice.  *See* N.Y. Civ. Rights Law § 76-a(1)(a).  A defamation claim should "be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice."  *Brimelow v. New York Times Co.*, 2021 WL 4901969, at *1 (2d Cir. Oct. 21, 2021) (quotation omitted).  Betters alleges that Lorence shared the email with other faculty members "in order to 'prove' that Dr. Betters was intimidating her into changing [Betters'] child's grade."  (Compl. ¶ 210).  Lorence thus lacked actual malice, and read the email in question as an improper attempt to pressure her.  Lorence's characterization of the email cannot plausibly be interpreted as being made with knowledge of falsity or reckless disregard.  N.Y. Civ. Rights Law § 76-a(2).

## **CONCLUSION**

For the reasons set forth herein, Defendants Nardin, Sullivan, Chiampou, and Lorence request that Betters' claims be dismissed, with prejudice.

Dated:  Buffalo, New York  
  October 27, 2023

PHILLIPS LYTLE LLP

By:    /s/Preston L. Zarlock  
  Preston L. Zarlock  
  Joshua Glasgow  
Attorneys for Defendants  
*Nardin Academy, Marsha Sullivan,*  
*Charlie Chiampou, and Patricia Lorence*  
One Canalside  
125 Main Street  
Buffalo, New York  14203  
Telephone No. (716) 847-8400  
pzarlock@phillipslytle.com  
jglasgow@phillipslytle.com

Doc #11375948

---

grade.  *See Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 366 (S.D.N.Y. 1998) ("[A] statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." (quotation omitted)).

- 25 -