**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X

SANDRA BETTERS,                                                :

                      Plaintiff,        :    Civil Case No.: 1:23-cv-00882 (JLS)

           v.                                     :

                                                  :

NARDIN ACADEMY, MARSHA SULLIVAN,        :
MICHAEL LAWLEY, FRANK EWING, LUKE        :
JACOBS, CHARLIE CHIAMPOU, PATRICIA        :
LORENCE, KENT LORENCE AND THERESE        :
FORTON-BARNES,                                            :

                                                  :

                      Defendants.        :

------------------------------------------------------------ X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT THERESE FORTON-BARNES' MOTION TO DISMISS THE AMENDED COMPLAINT

WIGDOR LLP

Michael J. Willemin
Monica Hincken

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
mhincken@wigdorlaw.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................1

SUMMARY OF FACTUAL ALLEGATIONS .............................................................................2

I.      LEGAL STANDARD........................................................................................................4

II.     DR. BETTERS HAS ADEQUATELY PLEADED A DEFAMATION CLAIM ...............6

        A.      Defendant Engaged in Repeated Defamatory Acts in an Effort to Destroy
                Plaintiff's Professional Reputation ............................................................................7

        B.      Defendant Was on Clear Notice About the Claims .................................................7

III.    NY ANTI-SLAPP STATUTE IS INAPPLICABLE .............................................................9

IV.     DR. BETTERS IS NOT A PUBLIC PERSON .....................................................................9

V.      DR. BETTERS IS NOT REQUIRED TO PROVE ACTUAL MALICE, BUT SHE
        HAS ADEQUATELY DONE SO .......................................................................................12

VI.     THE STATEMENTS AT ISSUE ARE NOT OPINION ....................................................14

CONCLUSION.............................................................................................................................18

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                          Page(s)

Abbott v. Harris Publications, Inc., No. 97 Civ.,
  7648(JSM), 2000 WL 913953 (S.D.N.Y. July 7, 2000) ............................................................ 9

Albert v. Loksen,
  239 F.3d 256 (2d Cir. 2001) ...................................................................................................... 8

Arista Records, LLC v. Doe 3,
  604 F.3d 110 (2d Cir. 2010) ...................................................................................................... 5

Armstrong v. Simon & Schuster, Inc.,
  85 N.Y.2d 373, 381, 625 N.Y.S.2d 477, 649 N.E.2d 825 (1995) .............................................. 6

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ................................................................................................................... 5

Atuahene v. City of Hartford,
  10 Fed. App'x 33 (2d Cir. 2001) ............................................................................................... 7

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ................................................................................................................... 5

Biro v. Conde Nast,
  883 F.Supp.2d 441 (S.D.N.Y. 2012) ....................................................................................... 15

Biro v. Condé Nast,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013) ..................................................................................... 10

Brian v. Richardson,
  87 N.Y.2 46 (1995) ............................................................................................................. 14, 15

Celle v. Filipino Rep. Enterprises Inc.,
  209 F.3d 163 (2d Cir. 2000) ............................................................................................... 6, 8, 9

Chambers v. Time Warner, Inc.,
  282 F.3d 147 (2d Cir. 2002) ...................................................................................................... 4

Coleman v. Grand,
  523 F. Supp. 3d 244 (E.D.N.Y. 2021) .................................................................................. 9, 10

Conklin v. Laxen,
  180 A.D.3d 1358, 118 N.Y.S.3d 893 (2020) ........................................................................... 15

Davis v. Boeheim,
    24 N.Y.3d 262, 22 N.E.3d 999 (2014) ............................................................ 14, 15

Doe v. St. Lawrence Univ.,
    No. 823 Civ. 00426 (BKS) (DJS), 2024 WL 1116454 (N.D.N.Y. Mar. 14, 2024) .................... 9

Elliott v. Donegan,
    469 F. Supp. 3d 40 (E.D.N.Y. 2020)................................................................ 12

Enigma Software Grp. USA, LLC v. Bleeping Computer LLC,
    194 F. Supp. 3d 263 (S.D.N.Y. 2016)............................................................... 12

Fairstein v. Netflix, Inc.,
    553 F. Supp. 3d 48 (S.D.N.Y. 2021)............................................................. 6, 13

Gear Up, Inc. v. City of New York,
    140 A.D.3d 515, 34 N.Y.S.3d 17 (1st Dept. 2016).................................................. 13

Germain v. M&T Bank Corp.,
    111 F. Supp.3d 506, 537 (S.D.N.Y. 2015)........................................................... 8

Global Network v. City of N.Y.,
    458 F.3d 150 (2d Cir. 2006)........................................................................ 4

Goel v. Bunge, Ltd.,
    820 F.3d 554 (2d Cir. 2016)........................................................................ 4

Gottwald v. Sebert,
    193 A.D.3d 573, 148 N.Y.S.3d 37 (2021) ...................................................... 10, 11

Gross v. New York Times,
    82 N.Y.2d 146 (1993) ............................................................................ 16

Henry v. Fox News Network LLC,
    629 F. Supp. 3d 136 (S.D.N.Y. 2022)............................................................... 6

Kamchi v. Weissman,
    125 A.D.3d 142, 1 N.Y.S.3d 169 (2014) ........................................................... 6

Lerman v. Flynt Distributing Co., Inc.,
    745 F.2d 123 (2d Cir. 1984)...................................................................... 10

Littlejohn v. City of New York,
    795 F.3d 297 (2d Cir. 2015)....................................................................... 5

Maron v. Legal Aid Soc'y,
  605 F. Supp. 3d 547 (S.D.N.Y. 2022)...................................................................... 9

Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.,
  551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021)............................................................ 9

Ocasio v. City of Canandaigua,
  513 F. Supp. 3d 310 (W.D.N.Y. 2021) .................................................................. 5

Palin v. New York Times Co.,
  940 F.3d 804 (2d Cir. 2019)................................................................................. 12

Qureshi v. St. Barnabas Hosp. Center,
  430 F. Supp.2d 279 (S.D.N.Y. 2006).................................................................... 15

Satanic Temple, Inc. v. Newsweek Mag. LLC,
  661 F. Supp. 3d 159 (S.D.N.Y. 2023)................................................... 6, 7, 10, 11

Serdarevic v. Centex Homes, LLC,
  760 F. Supp. 2d 322 (S.D.N.Y. 2010)................................................................... 4

St. Amant v. Thompson,
  390 U.S. 727 (1968) ............................................................................................ 13

Steinhilber v. Alphonse,
  68 N.Y.2d 283 (1986) ......................................................................................... 15

Stepanov v. Dow Jones & Co.,
  120 A.D.3d 28, 37, 987 N.Y.S.2d 37 (1st Dep't 2014) .......................................... 7

Thai v. Cayre Grp., Ltd.,
  726 F. Supp. 2d 323 (S.D.N.Y. 2010)................................................................... 15

TheECheck.vom, LLC v. NEMC Financial Services Grp., Inc.,
  16 Civ. 8722 (PKC), 2017 WL 2627912 (S.D.N.Y. June 16, 2017) ........................ 7

Thomas H. v. Paul B.,
  18 N.Y.3d 580 (2012) .................................................................................... 14, 16

Time, Inc. v. Firestone,
  424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976) ............................................ 11

Watson v. NY Doe 1,
  439 F. Supp. 3d 152 (S.D.N.Y. 2020)................................................................... 6

iv

Yesner v. Spinner,
   765 F.Supp. 48 (E.D.N.Y. 1991) ................................................................................. 6

Zuckerbrot v. Lande,
   75 Misc. 3d 269, 167 N.Y.S.3d 313 (N.Y. Sup. Ct. 2022) ........................................ 13

Statutes

N.Y. Civ. Rights Law § 76-a(1)(a) ................................................................................. 9

Plaintiff Sandra Betters ("Plaintiff" or "Dr. Betters") respectfully submits this memorandum of law in opposition to the Motion to Dismiss the Amended Complaint filed by Defendant Therese Forton-Barnes ("Defendant" or "Forton-Barnes"). For the following reasons, Defendant's Motion should be denied in its entirety.[1]

## PRELIMINARY STATEMENT

Defendant repeatedly defamed Dr. Betters despite never meeting her, never speaking to her and never reaching out to her to ask whether there was any truth to the claims she was making against her. Defendant also had absolutely no current affiliation with Nardin Academy ("Nardin" or the "School"), nor did she have any personal knowledge or basis to make defamatory claims against Dr. Betters. Instead, she inserted herself into a matter that she knew nothing about in an attempt to destroy Dr. Betters' professional reputation. As Defendant admits, she is an administrator of Nardin Together, a webpage and Facebook group that was created in part to ensure that "Nardin Academy…survives [the] institutional crisis" of Dr. Betters' tenure. See Def's. Br. at 4. The "institutional crisis" was, of course, one of Nardin's own making given that it was caused by Nardin's own improper and unlawful practices. Yet, Defendant had no concern about the truth, and her actions had a direct role in the lies, rumors and unlawful retaliation that Dr. Betters was subjected to while employed at Nardin.

---

[1]  Plaintiff's submission of this opposition is without prejudice to her right to bring a motion to disqualify Meghann Roehl as counsel in this action given that she will be a fact witness because, *inter alia*, she publicly made disparaging comments on social media about Plaintiff by referring to her as "some punitive outsider who's [sic] only legacy seems to be a trail of destruction," and (2) she was a member of Nardin Together, a group created to support the ouster of Dr. Betters, and made disparaging comments about Dr. Betters, including that she did not know how to write and that she was not qualified to draw the conclusions outlined in her dissertation. See Exhibit 1 attached to the Declaration of Michael J. Willemin.

1

**SUMMARY OF FACTUAL ALLEGATIONS**

In July 2021, after a rigorous hiring process and unanimous approval by the Board of Trustees, Dr. Betters was hired to be the President of Nardin Academy, the oldest independent Catholic school in Western New York. See Dkt. No. 58 ¶ 1. During the hiring process, the hiring committee specifically told Dr. Betters that Nardin Academy was looking for a leader to carry out the Diversity, Equity and Inclusion ("DEI") initiatives previously made by Marsha Sullivan and the Board of Trustees, create a desperately needed curriculum for the School and create a new strategic plan. Id. at ¶ 8.

Unfortunately, when Dr. Betters arrived at the School, it quickly became evident that many faculty members, staff, Trustees and community members were fiercely opposed to any diversity initiatives (id. at ¶ 7); the School's financial and operational state was seriously compromised as a result of nefarious practices happening behind the scenes at Nardin (id. at ¶¶ 9-10); and many teachers, administrators and Board members were strongly resistant to educational changes designed to improve the School and inclusivity. Id. at ¶¶ 91-95.

As Dr. Betters discovered the School's improper and unlawful practices, she reported her serious concerns to the Board of Trustees. Id. at ¶ 10. The more she complained, the louder false complaints against her grew. Id. Ultimately, Dr. Betters faced a mass hysteria fueled by lies, rumors and hate that resulted in being subjected to actual death threats. Id.

For a community that prides itself on "welcoming and celebrating all" (id. at ¶ 2), much of Nardin Academy's school community responded to Dr. Betters and her efforts to improve the School and correct its unlawful actions with vitriol. Id. at ¶ 3. Specifically, Defendant Forton-Barnes took a lead role in promoting, spreading and exacerbating the vitriol, hatred and attacks toward Dr. Betters, despite having never met Dr. Betters, having no children currently attending

2

Nardin and having no current connection to the School.  Id. at ¶ 278.  Defendant is the administrator of a Facebook group called "Nardin Together," which was formed by several parents who claim they wanted to prioritize greater transparency and accountability, but who actually wanted to support the removal of Dr. Betters.  Id. at ¶ 277.  Defendant made it her mission to attack, defame and destroy Dr. Betters.  Id. at ¶ 280.

In numerous social media posts, Defendant made and/or repeated several false allegations. On April 23, 2023, Defendant posted that Dr. Betters' previous employer "either fired her or let her go due to the same things at Nardin."  Id. at ¶ 281.  On April 28, 2023, Defendant posted on the Nardin Together public Facebook page that Dr. Betters "absolutely got fired" from her previous job and "made a deal with the school if she went 'quietly' then they would not say she got fired." Id. at ¶ 282.  Defendant never provided any evidence to support these false allegations.

On May 13, 2023, Defendant posted on the Nardin Together public Facebook page that Dr. Betters' dissertation "actually talks about how she wants to disrupt an all-girls Catholic school" and that "excessive amounts of [the School's] money has been spent on lawyers, PR firm, crisis management, HRBuffalo, private security for Sandra Betters, and hiring a social media firm that is Sandra Betters's best friend."  Id. at ¶ 283.  Defendant also improperly obtained Dr. Betters' embargoed dissertation through fellow Nardin Together member Sarah Irwin.  Id. at ¶ 284. Importantly, the embargoed dissertation was not permitted to be released because the subjects were minor students, though they were not Nardin Academy students.  Id.  Defendant went on to falsely accuse Dr. Betters of "failing to get proper consent" in connection with her dissertation (Defendant had zero knowledge upon which to base this false accusation), wanting to disrupt Catholic education and taking advantage of students (in connection with the same dissertation that, again, about which Defendant was completely ignorant).  Id. at ¶ 284.

3

These numerous false statements from Defendant are just that – false.  Further, these lies are significantly detrimental to Dr. Betters' professional reputation and future work opportunities. Id. at ¶ 285.  Yet, throughout all the lies being spread, the hate being spewed and the defamatory attacks on her personal and professional character, Dr. Betters was guided by one principal – what was best for Nardin – and she continued to make decisions accordingly.  Id. at ¶ 11.  Forton-Barnes, who never spoke to, met or reached out to Dr. Betters relied solely upon rumor and conjecture while repeatedly spreading numerous lies to destroy Dr. Betters' professional reputation and future work opportunities.

## I.    LEGAL STANDARD

For the purposes of a Rule 12(b) motion, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated by reference, and to matters of which judicial notice may be taken." Serdarevic v. Centex Homes, LLC, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation omitted); see Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).  "In some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss" (see Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016).  "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'"  Id. (citation and internal quotation marks omitted).  "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough." Id. (quoting Global Network v. City of N.Y., 458 F.3d 150, 156 (2d Cir. 2006)).

4

Despite this clear standard on a motion to dismiss, Defendant filed numerous exhibits with documents that are plainly not integral to the Amended Complaint ("Am. Compl.").[2] They should not be considered.  Instead, on a motion to dismiss for failure to state a claim, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor."  Littlejohn v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015); see also Ocasio v. City of Canandaigua, 513 F. Supp. 3d 310, 319 (W.D.N.Y. 2021).  The complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678.

When reviewing a motion to dismiss, a court must "assume [the] veracity" of the allegations set forth, draw all "reasonable inference[es]" in the plaintiff's favor and use its "judicial experience and common sense" to conduct a "context specific" analysis of the complaint. Ashcroft, 556 U.S. at 678-79.  The plaintiff is not required to plead "specific evidence" explaining precisely how the defendant's conduct was unlawful, Arista Records, LLC v. Doe 3, 604 F.3d 110, 119-21 (2d Cir. 2010), but only facts sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555 (internal citations omitted).

---

[2]    While the hundreds of pages that Defendant filed are improper on a motion to dismiss, they also highlight that Dr. Betters did not participate in the media stories and that the stories were premised, instead, on Defendants' actions.

## II.   DR. BETTERS HAS ADEQUATELY PLEADED A DEFAMATION CLAIM

"The elements of a cause of action for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard,[3] and it must either cause special harm or constitute defamation per se." Watson v. NY Doe 1, 439 F. Supp. 3d 152, 160 (S.D.N.Y. 2020) quoting Kamchi v. Weissman, 125 A.D.3d 142, 1 N.Y.S.3d 169, 180 (2014) (internal quotation marks omitted).  "[A] writing which tends to disparage a person in the way of his office, profession or trade is defamatory per se and does not require proof of special damages." Celle v. Filipino Rep. Enterprises Inc., 209 F.3d 163, 179–80 (2d Cir. 2000) (internal quotations and citations omitted).  See also Yesner v. Spinner, 765 F.Supp. 48, 52 (E.D.N.Y. 1991) ("It has long been the law in New York that a defamatory statement that is a direct attack upon the business, trade or profession of the plaintiff is considered defamation 'per se,' and therefore actionable without any proof of special damages").

"Even where a statement is literally true, it may still be actionable if it implies a defamatory meaning.  Henry v. Fox News Network LLC, 629 F. Supp. 3d 136, 145 (S.D.N.Y. 2022).[4]  A defamation-by-implication claim involves "false suggestions, impressions and implications arising from otherwise truthful statements." Satanic Temple, Inc. v. Newsweek Mag. LLC, 661 F. Supp. 3d 159, 170 (S.D.N.Y. 2023) citing Armstrong v. Simon & Schuster, Inc., 85 N.Y.2d 373, 381, 625 N.Y.S.2d 477, 649 N.E.2d 825 (1995).  To succeed on such a claim, "the plaintiff must make a

---

[3]    Under New York law, fault is established by either negligence or actual malice depending on the status of the libeled party.  Celle v. Filipino Rep. Enterprises Inc., 209 F.3d 163, 176 (2d Cir. 2000).  The relevant standard here is negligence given that Dr. Betters is not a public person.

[4]    Because "it is not entirely clear whether there is a separate cause of action for defamation per quod in New York," Courts consider whether the definition of defamation per quod have been met even when, for example, a plaintiff only brings claims for defamation per se.  Henry, 629 F. Supp. 3d at 145.  "In a claim of defamation per quod, 'no defamatory statement is present on the face of the communication but a defamatory import arises through reference to facts extrinsic to the communication.'" Id. citing Fairstein v. Netflix, Inc., 553 F. Supp. 3d 48, 63 (S.D.N.Y. 2021).

rigorous showing" that the challenged publication "as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed the inference." Id. quoting Stepanov v. Dow Jones & Co., 120 A.D.3d 28, 37, 987 N.Y.S.2d 37 (1st Dep't 2014). This is an "objective" standard, which "asks whether the plain language of the communication itself suggests that an inference was intended or endorsed." Id.

### A. Defendant Engaged in Repeated Defamatory Acts in an Effort to Destroy Plaintiff's Professional Reputation

Dr. Betters alleged that Defendant publicly made the following false statements: (1) on April 23, 2023 Defendant "repeated…that Dr. Betters' previous employer 'either fired her or let her go due to the same things at Nardin'" (id. at ¶ 281); (2) on April 28, 2023, that Dr. Betters "absolutely got fired" from her previous job (id. at ¶ 282); on May 13, 2023, that "excessive amounts of [the School's] money has been spent on lawyers, PR firm, crisis management, HRBuffalo, private security for Sandra Betters, and hiring a social media firm that is Sandra Betters, best friend [sic]" (id. at ¶ 283). The Amended Complaint further alleges that Defendant obtained Dr. Betters' embargoed dissertation through deceit, fraud and/or misrepresentations, illegally distributed the embargoed dissertation and falsely accused her of failing to get the proper consent for her dissertation with the intention to harm Dr. Betters' professional reputation and future work opportunities. Id. at ¶¶ 284-285.

### B. Defendant Was on Clear Notice About the Claims

Defendant argues that Dr. Betters does not allege any specific allegations appliable to any specific Defendant and instead "lump[s] all defendants together in each claim and provid[es] no factual basis to distinguish their conduct." TheECheck.vom, LLC v. NEMC Financial Services Grp., Inc., 16 Civ. 8722 (PKC), 2017 WL 2627912, at *2 (S.D.N.Y. June 16, 2017) (quoting Atuahene v. City of Hartford, 10 Fed. App'x 33, 34 (2d Cir. 2001)). However, the only place where

7

Dr. Betters groups Defendants together at all is under the Seventh Cause of Action for Defamation, but Dr. Betters "repeats and re-alleges each and every allegation in the preceding paragraphs." In those preceding paragraphs, as detailed herein, Dr. Betters alleges specific and independent claims of defamation against each Defendant.

Indeed, Dr. Betters has adequately pleaded that Defendant's statements constitute defamation per se and/or defamation-by-implication because the statements plainly and openly disparage Dr. Betters' professional reputation and otherwise subject her to ridicule, contempt or disgrace. See Albert v. Loksen, 239 F.3d 256, 271 (2d Cir. 2001) (listing the four categories of defamation per se, including words that "tend to injure the plaintiff in his or her trade, business or profession"). The Amended Complaint identifies all four elements required: (1) the defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and (4) the third parties to whom the statements were published. Germain v. M&T Bank Corp., 111 F. Supp.3d 506, 537 (S.D.N.Y. 2015). With respect to the statements that Defendant made about Dr. Betters' dissertation, Defendant's statements are true to the extent that Dr. Betters wrote a dissertation but were defamatory based on the false narrative that Defendant spread that Dr. Betters failed to get the proper consent from the students studied in her dissertation. Am. Compl. at ¶¶ 285-286. Importantly, accusing an educator of failing to get the proper consent from students is an incredibly egregious accusation given that implicates not only a violation of ethical and professional obligations, but also federal law. Not surprisingly, Courts hold that falsely claiming "a school teacher [is] guilty of improper conduct as to his pupils" is defamation per se. Celle v. Filipino Rep. Enterprises Inc., 209 F.3d 163, 180 (2d Cir. 2000) (internal citations omitted).

As a result, Dr. Betters has adequately pleaded all four elements required to make her defamation claim against Defendant. See Germain, 111 F. Supp.3d at 537 (providing the pleading

standard for defamation).  Defendant is on sufficient notice as to what claims are being made against her, and Defendant's Motion to Dismiss should be denied.

## III.    <u>NY ANTI-SLAPP STATUTE IS INAPPLICABLE</u>

Defendant argues that New York's Anti-SLAPP statute is applicable here.[5] <u>See</u> Def.'s Brief at 9.  However, the Anti-SLAPP law is inapplicable in federal court because it requires a plaintiff to show that there is a substantial basis for a defamation claim, which is in conflict with Rule 12(b)(6).  <u>See</u>, <u>e.g.</u>, <u>Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.</u>, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021) ("substantial basis" standard articulated in New York's anti-SLAPP law "is inapplicable in federal court"); <u>Maron v. Legal Aid Soc'y</u>, 605 F. Supp. 3d 547, 567 n.11 (S.D.N.Y. 2022) (same); <u>Doe v. St. Lawrence Univ.</u>, No. 823 Civ. 00426 (BKS) (DJS), 2024 WL 1116454, at *23 (N.D.N.Y. Mar. 14, 2024) ("even assuming Plaintiff's alleged statements fall within New York's anti-SLAPP statute, [Plaintiff] need only satisfy the pleading standards articulated in Rule 12(b)(6)").

## IV.    <u>DR. BETTERS IS NOT A PUBLIC PERSON</u>

"The showing of fault necessary to recover for [defamation] varies depending on a plaintiff's position in society, requiring a higher degree of fault for public officials and public figures." <u>Celle v. Filipino Rep. Enters. Inc.</u>, 209 F.3d 163, 176 (2d Cir. 2000); <u>see</u> <u>also</u> N.Y. Civ. Rights Law § 76-a(1)(a).  "There are two types of public figures: general and limited purpose public figures.  General purpose public figures are those who 'occupy positions of such persuasive

---

[5]    Notably, Defendant points to <u>Coleman v. Grand</u>, 523 F. Supp. 3d 244 (E.D.N.Y. 2021) to support that the New York anti-SLAPP statute applies here.  However, that case was decided at the summary judgment stage, not the motion-to-dismiss stage.  Defendant also cites to <u>Abbott v. Harris Publications, Inc.</u>, No. 97 Civ. 7648(JSM), 2000 WL 913953, at *7 (S.D.N.Y. July 7, 2000), but that is a case decided on summary judgment based on the limited-purpose public figure standard and not under the anti-SLAPP statute.

power and influence that they are deemed public figures for all purposes'" Satanic Temple, Inc. v. Newsweek Mag. LLC, 661 F. Supp. 3d 159, 168 (S.D.N.Y. 2023).  Defendant argues that Dr. Betters is a limited purpose public figure.  See Def.'s Brief at 10.

For Second Circuit courts to categorize a plaintiff as a limited public figure, a defendant must show that the plaintiff has: "(1) successfully invited public attention to his views in an effort to influence other prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media." Coleman v. Grand, 523 F.Supp.3d 244, 256 (E.D.N.Y. 2021) (citing Lerman v. Flynt Distributing Co., Inc., 745 F.2d 123, 136-37 (2d Cir. 1984)).  Importantly, "[a] private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." Gottwald v. Sebert, 193 A.D.3d 573, 148 N.Y.S.3d 37, 44 (2021), aff'd as modified, 40 N.Y.3d 240, 220 N.E.3d 621 (2023).  Instead, "[t]he degree of voluntary involvement in the public controversy is important. Id. (quoting Biro v. Condé Nast, 963 F. Supp. 2d 255, 274 [S.D.N.Y. 2013], aff'd 622 Fed. Appx. 67 [2d Cir.2015], cert denied — – U.S. ——, 136 S.Ct. 2015, 195 L.Ed.2d 217 [2016]).

Defendant wrongly asserts that Dr. Betters is a limited-purpose public figure for the following reasons: (1) Plaintiff was highly involved in community affairs; (2) the controversy was highly publicized; and (3) Plaintiff commented in one news article *after* her lawsuit was filed and many, many months after the defamatory comments at issue were published.[6]

---

[6]   Defendant incorrectly states that "Plaintiff continu[ed] to participate in interviews regarding this matter," which implies that Plaintiff participated in multiple interviews.  Defendant's own declaration belies this statement.  See Def.'s Brief at 11.

First, it is unclear what Defendant means when she says that Dr. Betters was highly involved in community affairs and there is no evidence or explanation in the record to make such a determination. However, even if this assertion was true, there is no explanation as to how being involved in community affairs could transform Dr. Betters into a limited purpose public figure in relation to the subject matter of the defamatory attacks at issue herein.

Second, the standard is not whether a *situation* was highly publicized; instead, the question is whether the Plaintiff *solicited* public attention. Satanic Temple, Inc. v. Newsweek Mag. LLC, 661 F. Supp. 3d 159, 169 (S.D.N.Y. 2023) (holding "…attention alone is not enough. Plaintiff must have 'invited public attention to [its] views in an effort to influence others'") (internal quotation and citation omitted) (emphasis added). Defendant cannot and does not point to any evidence that Plaintiff *solicited* or voluntarily invited attention. Time, Inc. v. Firestone, 424 U.S. 448, 453–55, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976) (holding that a prominent socialite involved in a heavily publicized divorce action was not a public figure since such publicity had been involuntarily obtained as a byproduct of the divorce proceedings).

Third, as Defendant asserts, there was significant media attention surrounding this matter, yet Defendant can point to only one news article where Dr. Betters commented about the lawsuit after it was filed. These comments occurred more than four months after Defendant publicly defamed Dr. Betters, during which time Dr. Betters invited no media attention. Commenting in a single article after this lawsuit was filed in an effort to restore the reputation that Defendant attempted to destroy is not enough to make Dr. Betters a limited public figure. See Gottwald, 193 A.D.3d 573 (holding that a plaintiff who made one public comment about the litigation in an effort to defend himself was not a limited-purpose public person); see also Satanic Temple, Inc., 661 F.

11

Supp. 3d at 169.  ("[o]ne does not voluntarily inject itself into a public controversy simply by filing a lawsuit to vindicate its rights, even if doing so incidentally attracts public attention").

In any case, Defendant's inclusion of articles surrounding Dr. Betters, rather than relying on the allegations in the Amended Complaint, only demonstrates that the Court cannot determine Dr. Betters' status as a limited-purpose public figure at the motion to dismiss stage.  See, e.g., Elliott v. Donegan, 469 F. Supp. 3d 40, 48 (E.D.N.Y. 2020) (public figure inquiry is often "undertaken by a court only once parties have completed discovery" and can only be resolved on motion to dismiss "where the question whether a plaintiff is a public figure can be determined based upon the pleadings alone"); Enigma Software Grp. USA, LLC v. Bleeping Computer LLC, 194 F. Supp. 3d 263, 288 (S.D.N.Y. 2016) (court could not conclude that plaintiff was a limited-purpose public figure based on the pleadings and before discovery).

The Amended Complaint does not support the conclusion that Dr. Betters is a limited-purpose public figure. The Court should not rely on the substance of the extrinsic articles Defendants selectively attached at the motion to dismiss stage.  See Palin v. New York Times Co., 940 F.3d 804, 811-13 (2d Cir. 2019) (district court erred in considering extrinsic evidence that was not "integral" to the complaint at motion to dismiss stage).

## V.    DR. BETTERS IS NOT REQUIRED TO PROVE ACTUAL MALICE, BUT SHE HAS ADEQUATELY DONE SO

Because she is not a public person, Dr. Betters is not required to show actual malice. However, even if she were required to do so (which she is not), Dr. Betters has sufficiently pleaded actual malice.  The allegations in the Amended Complaint raise a plausible inference that Defendant acted with actual malice by making false claims about Dr. Betters, relying entirely on rumor and conjecture, and purposefully avoiding facts demonstrating the falsity of those allegations in an effort to harm Dr. Betters' professional reputation and future work opportunities.

12

Further, although Defendant implies that Dr. Betters must "show" actual malice by "clear and convincing evidence" (see Def.'s Brief at 11), at the motion to dismiss stage, if Dr. Betters is a public figure (which she is not), she need only allege facts sufficient to give rise to a plausible inference of actual malice.  Zuckerbrot v. Lande, 75 Misc. 3d 269, 296, 167 N.Y.S.3d 313, 335 (N.Y. Sup. Ct. 2022) ("[C]lear and convincing evidence" proving actual malice is not needed to survive a motion to dismiss: it is enough, at this stage, that Plaintiffs "allege facts showing that defendant acted with actual malice") quoting Gear Up, Inc. v. City of New York, 140 A.D.3d 515, 515, 34 N.Y.S.3d 17 (1st Dept. 2016); see also Fairstein v. Netflix, Inc., 553 F.Supp.3d 48 (S.D. N.Y. 2021) ("[T]he issue of actual malice is more appropriately weighed at a later stage of the proceedings").

In this case, it is without a doubt that the statements were made with a reckless disregard for their veracity, which constitutes malice.  Reckless disregard "cannot be fully encompassed in one infallible definition," but rather it should be assessed on a case-by-case basis.  St. Amant v. Thompson, 390 U.S. 727, 730-31 (1968).  As detailed herein, Defendant has never spoken to Dr. Betters, has never met Dr. Betters, has never reached out to Dr. Betters to determine the truth of the statements she continued to publish and knowingly ignored the investigation the School conducted that found absolutely no wrongdoing by Dr. Betters.

Instead, Defendant repeatedly stated on the Nardin Together public Facebook page that Dr. Betters "got fired" from her previous position before coming to Nardin (see Dkt. No. 58 ¶¶ 281-82), claimed that "excessive amounts of money has been spent on lawyers, PR firm, crisis management, HRBuffalo, private security for Sandra Betters, and hiring a social media firm that is Sandra Betters's best friend" (Id. at ¶ 283), and published Dr. Betters' embargoed dissertation

while making false assertions about Dr. Betters' obtaining the required consent from the subjects of her work (Id).

These statements are false, and Defendant repeatedly showed a reckless disregard for the truth. In conclusion, Dr. Betters has adequately pleaded actual malice, and therefore Defendant's Motion to Dismiss should be denied in its entirety.

## VI. THE STATEMENTS AT ISSUE ARE NOT OPINION

At the motion to dismiss stage, the Court must consider whether any reading of the complaint supports the defamation claim. Thus, although "[i]t may well be that [the challenged statements] are subject to defendants' interpretation ... the motion to dismiss must be denied if the communication at issue, taking the words in their ordinary meaning and in context, is also susceptible to a defamatory connotation." Davis v. Boeheim, 24 N.Y.3d 262, 272, 22 N.E.3d 999, 1006 (2014).

To distinguish an actionable statement of fact from a protected statement of opinion, the court must look at three factors: "(1) whether the allegedly defamatory words have a 'precise meaning' that is 'readily understood'; (2) whether the statements can be proven as true or false; and (3) 'whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal [to] readers or listeners that what is being read or hear is likely to be opinion, not fact.'" Thomas H. v. Paul B., 18 N.Y.3d 580, 584 (2012) (quoting Brian v. Richardson, 87 N.Y.2 46, 51 (1995)). "Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were

14

conveying facts about the ... plaintiff'" Davis v. Boeheim, 24 N.Y.3d 262, 270, 22 N.E.3d 999, 1005 (2014) citing Brian, 87 N.Y.2d at 51.

If the statements are determined to be opinions, the court still must analyze whether the statement is a pure opinion (non-actionable) or a mixed opinion (actionable).

> A pure opinion is a statement of opinion which is accompanied by a recitation of the facts upon which it is based. An opinion not accompanied by such a factual recitation may, nevertheless, be pure opinion if it does not imply that it is based upon undisclosed facts. When, however, the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a mixed opinion . . . The actionable element of a mixed opinion is not the false opinion itself – it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking.

Steinhilber v. Alphonse, 68 N.Y.2d 283, 289-90 (1986); see, e.g., Biro v. Conde Nast, 883 F.Supp.2d 441, 459-60 (S.D.N.Y. 2012); Qureshi v. St. Barnabas Hosp. Center, 430 F. Supp.2d 279, 288 (S.D.N.Y. 2006); Brian, 87 N.Y.2d at 46.

Defendant does not specify whether she is arguing that her statements were pure or mixed opinions. However, in either case, the statements constitute defamation. First, Defendant falsely published that Dr. Betters "absolutely got fired" from her previous position and that the school "either fired her or let her go due to the same things at Nardin." Dkt. No. 58 ¶¶ 281-82. This alone establishes defamation per se. See Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323, 331 (S.D.N.Y. 2010) ("[a]s a general rule, a statement that 'tend[s] to injure the plaintiff in his or her trade, business or profession' is defamatory per se…"); see also Conklin v. Laxen, 180 A.D.3d 1358, 1360, 118 N.Y.S.3d 893, 896-97 (2020) (holding that plaintiff sufficiently alleged that statements that purportedly injured plaintiff's professional standing constituted defamation per se).

Defendant's assertion that the fact that she included the word "supposedly" qualifies these statements as an opinion is contradicted by case law. See, e.g., Davis v. Boeheim, 24 N.Y.3d 262,

15

272–73, 22 N.E.3d 999, 1007 (2014) (holding that prefacing statements by saying "I believe" is insufficient to transform statements into non-actionable pure opinion because a reasonable reader could view the statements as supported by undisclosed facts (citing Thomas H. v. Paul B., 18 N.Y.3d 580, 586); see also Gross v. New York Times, 82 N.Y.2d 146, 155 (1993) (holding that a fact is not transformed into a non-actionable expression of opinion merely because it is couched in the form of an opinion).

When analyzed using the framework above, these phrases have a precise meaning that is readily understood – that Dr. Betters was terminated from her former position.  This can be proven true or false.  Either Dr. Betters was fired from her last position or she was not.  Defendant is not saved from the full context either.  The social environment on the Nardin Together public Facebook page is such that reasonable readers would certainly have taken Defendant's statements to be fact.  Even if, *arguendo*, the statements were considered opinion, they would be mixed opinions, because, while no additional factual support is cited, factual support is implied from the term "absolutely" and from the implications of "due to the same things at Nardin."  Therefore, these statements are not protected pure or mixed opinions.

Next, Defendant falsely stated that "excessive amounts of money has been spent on lawyers, PR firm, crisis management, HRBuffalo, private security for Sandra Betters, and hiring a social media firm that is Sandra Betters' best friend."  Id. at ¶ 283.  Again, under the framework above, this statement is not protected pure opinion, and it is actionable as defamation.  This statement has a precise meaning that is readily understood, which is that Dr. Betters is failing in her position and using school funds to keep her position, even engaging in self-dealing with friends.  This is false and the statement can be proven true or false.  The full context of these remarks is not enough to save Defendant either because of the nature of the Nardin Together public

16

Facebook page and the fact that Defendant is an administrator of the page would certainly lead readers to believe the veracity of these statements. Even if, *arguendo*, the statements were considered opinion, they would be mixed opinions, as no factual support is listed. However, because of the way the sentence is formed into a long list, it implies factual backing for each item that "excessive amounts of money" is supposedly being spent on. Therefore, these statements are mixed opinion, not pure opinion, and are actionable. To the extent that Defendant is suggesting that the word "excessive" is sufficient to render the statement an opinion, this argument fails because it was false to claim that any money was spent in the way Defendant claimed.

Finally, Defendant posted on the Nardin Together public Facebook page that Dr. Betters' dissertation "actually talks about how she wants to disrupt an all-girls Catholic school" after unlawfully obtaining the embargoed dissertation. Id. ¶ 283. Defendant went on to accuse Dr. Betters of ethical misconduct, claiming that she failed to obtain proper consent and took advantage of students. Id. at ¶ 284. This is a serious accusation not to be taken lightly that could have a lasting impact on Dr. Betters' career. These statements have precise meanings that are readily understood by the reader, namely that Dr. Betters violated ethical guidelines for educators and doctoral students and took advantage of students. These statements can be proven true or false – and they are false. The social context in which these statements were posted makes the situation worse for Defendant. They were posted to the public Nardin Together Facebook page, a page that for all accounts was primarily created to defame Dr. Betters. The statements are not pure opinion, as they had no factual support listed, but factual support was implied by the fact that Defendant unlawfully had a copy of the dissertation in her possession.

In addition, with respect to the defamatory statements made about Plaintiff's dissertation research, Defendant attempts to argue that "a reasonable reader could conclude that the dissertation

17

was prepared by Plaintiff, at least in part, while in her course of employment" because she thanks the Nardin community in the acknowledgment section. See Def.'s Brief at 14. In addition to this making little logical sense, particularly given that Dr. Betters thanks multiple school communities, it also confuses the issue. The defamation claim is not premised on the fact that Plaintiff did or did not prepare any part of her dissertation while employed at Nardin. This issue is that Defendant made the false claim that Dr. Betters engaged in unethical research methods, which is demonstrably untrue.

## CONCLUSION

Defendant's false assertions contributed to Plaintiff's life and professional career being turned upside down. She made false statements repeatedly without any regard for the truth in an effort to assert herself into a situation that did not involve her. Defendant took absolutely no steps to learn the truth. Instead, she simply sought to destroy Dr. Betters. Plaintiff has properly pleaded her defamation claims against Defendant. For all of the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety, and this case should proceed to discovery and trial.

Dated: April 5, 2024
      New York, New York                         Respectfully submitted,

**WIGDOR LLP**

By: _____
              Michael J. Willemin
              Monica Hincken

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
mhincken@wigdorlaw.com

*Counsel for Plaintiff*

18