**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------- X

SANDRA BETTERS,                             :

                 Plaintiff,      :    Civil Case No.: 1:23-cv-00882 (JLS)

         v.              :

                             :

NARDIN ACADEMY, MARSHA SULLIVAN,  :
MICHAEL LAWLEY, FRANK EWING, LUKE  :
JACOBS, CHARLIE CHIAMPOU, PATRICIA  :
LORENCE, KENT LORENCE AND THERESE  :
FORTON-BARNES,                   :

                             :

             Defendants.   :

--------------------------------------------------------------- X

<br/>

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS NARDIN ACADEMY, MARSHA SULLIVAN AND CHARLIE CHIAMPOU'S <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

<br/>

**WIGDOR LLP**

Michael J. Willemin
Monica Hincken

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
mhincken@wigdorlaw.com

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

SUMMARY OF FACTUAL ALLEGATIONS ..................................................................1

I.      MOTION TO DISMISS LEGAL STANDARD................................................3

II.     THE MINISTERIAL EXCEPTION DOES NOT APPLY...................................4

III.    DR. BETTERS HAS PROPERLY PLEADED RETALIATION CLAIMS UNDER §1981, TITLE VII AND NYSHRL .........................................................................7

        A.      Dr. Betters Engaged in Protected Activity ................................................9

        B.      Defendants Had Knowledge About Dr. Betters' Protected Activity .....................12

        C.      Defendants Took an Adverse Employment Action Against Dr. Betters ................13

        D.      Dr. Betters Alleged Causation Between Her Complaints and Termination ..........13

IV.     DR. BETTERS PROPERLY PLEADED HER WHISTLEBLOWING CLAIMS ............17

        A.      Nardin Subjected Dr. Betters to Unlawful Retaliation in Violation of NY Whistleblower Law, § 740 ....................................................................17

        B.      Nardin Subjected Dr. Betters to Unlawful Retaliation in Violation of NY Whistleblower Law, § 715-b................................................................21

V.      DR. BETTERS PROPERLY PLEADED HER BREACH OF CONTRACT CLAIM......23

CONCLUSION..................................................................................................................25

## TABLE OF AUTHORITIES

Cases                                                                                                                                    Pages

Albunio v. City of New York,
   16 N.Y.3d 472 (2011) ................................................................................................................ 10

Arista Records LLC v. Doe 3,
   604 F.3d 110 (2d Cir. 2010)...................................................................................................... 3

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) .................................................................................................................. 3

Banks v. Gen. Motors, LLC,
   81 F.4th 242 (2d Cir. 2023)........................................................................................... 7, 15, 20

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007) .............................................................................................................. 3, 4

Bostock v. Clayton Cnty., Georgia,
   590 U.S. 644 (2020) ................................................................................................................ 16

Brandenburg v. Greek Orthodox Archdiocese of N. Am.,,
   No. 20 Civ. 3809 (JMF), 2021 WL 2206486(S.D.N.Y. June 1, 2021) .................................. 6, 7

Burlington N. & Santa Fe Ry. Co. v. White,
   548 U.S. 53, 57 (2006) .......................................................................................................... 8, 13

Cannata v. Cath. Diocese of Austin,
   700 F.3d 169 (5th Cir. 2012)..................................................................................................... 7

Cantley v. Indiana Univ. Health, Inc.,
   No. 13 Civ. 01296 (TWP) (MJD), 2015 WL 5692511 (S.D. Ind. Sept. 28, 2015)................... 11

Chepak v. Metro. Hosp.,
   555 F. App'x 74 (2d Cir. 2014).................................................................................................. 3

Craig v. City of New York,
   No. 1:20 Civ. 02152 (LDH)(PK), 2022 WL 4596744 (E.D.N.Y. Sept. 30, 2022) ................... 22

Crawford v. Metro. Gov't of Nashville & Davidson Cnty. Tenn.,
   555 U.S. 271, 276 (2009) ........................................................................................................ 18

Dedjoe v. McCarthy,
   No. 115 Civ. 170 (LEK) (CFH), 2017 WL 4326516 (N.D.N.Y. Sept. 28, 2017)..................... 14

Dillon v. Ned Mgmt., Inc.,
   85 F. Supp. 3d 639 (E.D.N.Y. 2015).................................................................................. 10

Direct Mail of Maine, Inc. v. Conduent Bus. Servs., LLC,
   No. 6:22 Civ. 6570 (FPG), 2023 WL 8602135 (W.D.N.Y. Dec. 12, 2023) ........................... 23

E.E.O.C. v. Roman Cath. Diocese of Raleigh, N.C.,
   213 F.3d 795 (4th Cir. 2000)............................................................................................... 4

Edley-Worford v. Virginia Conf. of United Methodist Church,
   430 F. Supp. 3d 132 (E.D. Va. 2019).................................................................................... 5

Eskimo Pie Corp. v. Whitelawn Dairies, Inc.,
   284 F. Supp. 987 (S.D.N.Y. 1968)....................................................................................... 23

Farmer v. Shake Shack Enterprises, LLC,
   473 F. Supp. 3d 309 (S.D.N.Y. 2020)................................................................................... 18

Flanagan v. Girl Scouts of Suffolk Cnty., Inc.,
   No. 21 Civ. 7153 (KAM) (ARL), 2023 WL 6594885 (E.D.N.Y. Aug. 25, 2023).................... 22

Fratello v. Archdiocese of New York,
   863 F.3d 190 (2d Cir. 2017)................................................................................................. 6

Fratello v. Roman Cath. Archdiocese of New York,
   175 F. Supp. 3d 152 (S.D.N.Y. 2016).................................................................................... 4

Friederick v. Passfeed, Inc.,
   No. 21 Civ. 2066 (RA), 2022 WL 992798 (S.D.N.Y. Mar. 31, 2022)...................................... 9

Giscombe v. New York City Dep't of Educ.,
   39 F. Supp. 3d 396 (S.D.N.Y. 2014)...................................................................................... 9

Gordon v. New York City Bd. of Educ.,
   232 F.3d 111 (2d Cir. 2000)............................................................................................. 12, 13

Gordwin v. Amazon.com Inc.,
   No. 21 Civ. 00888 (PHX) (SPL), 2021 WL 5396086 (D. Ariz. Nov. 17, 2021) ...................... 11

Grant v. Bethlehem Steel Corp.,
   622 F.2d 43 (2d Cir. 1980)................................................................................................... 15

Henry v. Wyeth Pharms., Inc.,
   616 F.3d 134 (2d Cir. 2010)................................................................................................. 12

Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.,
    565 U.S. 171 (2012) ................................................................................................ 4, 5

Hubbard v. Total Comm'ns, Inc.,
    347 F. App'x 679 (2d Cir. 2009)..................................................................................... 18

James v. Countrywide Fin. Corp.,
    849 F. Supp. 2d 296 (E.D.N.Y. 2012)............................................................................. 8

Joshi v. Trustees of Columbia Univ. in City of New York,
    515 F. Supp. 3d 200 (S.D.N.Y. 2021).................................................................... 21, 22

Kekovic v. Titan Motor Grp. LLC,
    No. 22 Civ. 2142 (MKB), 2023 WL 6385712 (E.D.N.Y. Sept. 29, 2023) ................................ 9

Knight v. State Univ. of New York at Stony Brook,
    No. 13 Civ. 0481 (JS) (GRB), 2013 WL 6002846 (E.D.N.Y. Nov. 12, 2013) ........................... 8

Lamoureux v. Trustco Bank,
    592 F. Supp. 3d 14 (N.D.N.Y. 2022) ............................................................................. 23

Little v. Nat'l Broad. Co.,
    210 F. Supp. 2d 330 (S.D.N.Y. 2002).............................................................................. 14

Littlejohn v. City of New York,
    795 F.3d 297 (2d Cir. 2015)................................................................................. 3, 18, 23

Lyte v. S. Cent. Connecticut Reg'l Water Auth.,
    482 F. Supp. 2d 252 (D. Conn. 2007) .............................................................................. 11

Malena v. Victoria's Secret Direct, LLC,
    886 F. Supp. 2d 349 (S.D.N.Y. 2012)....................................................................... 18, 19

Meyenhofer v. Larsen & Toubro Infotech Ltd.,
    503 F. Supp. 3d 39, 48(S.D.N.Y. 2020)......................................................................... 11

Mihalik v. Credit Agricole Cheuvreux, N. Am., Inc.,
    715 F.3d 102 (2d Cir. 2013)................................................................................... 9, 14

Ocasio v. City of Canandaigua,
    513 F. Supp. 3d 310 (W.D.N.Y. 2021) ............................................................................ 3

Packer v. Skid Roe, Inc.,
    938 F.Supp. 193 (S.D.N.Y. 1996)................................................................................. 16

iv

People by James v. Nat'l Rifle Ass'n of Am., Inc.,
    74 Misc. 3d 998, 165 N.Y.S.3d 234 (N.Y. Sup. Ct. 2022) ...................................................... 22

Rosen v. Zionist Org. of Am.,
    No. 159365/22, 2024 WL 1313207 (N.Y. App. Div. Mar. 28, 2024)........................................ 22

Roy v. ESL Fed. Credit Union,
    No. 19 Civ 6122 (FPG), 2020 WL 5849297 (W.D.N.Y. Sept. 30, 2020)................................ 23

Rys v. Grimm,
    No. 6:19 Civ. 1251 (FJS)(ATB), 2021 WL 827671 (N.D.N.Y. Mar. 4, 2021).......................... 8

Salahuddin v. New York City Dep't of Educ.,
    No. 15 Civ 6712 (LTS) (DCF), 2017 WL 3724287 (S.D.N.Y. Aug. 28, 2017) ........................ 9

Seivright v. MontefioreMed. Ctr., Hosp. of Albert Einstein Coll. of Med.,
    No. 11 Civ. 8934 (AJN), 2014 WL896744, at *12 (S.D.N.Y. Mar. 3, 2014)........................... 12

Shub v. Westchester Cmty. Coll.,
    556 F. Supp. 2d 227 (S.D.N.Y. 2008)................................................................................. 16, 20

Soto v. Marist Coll.,
    No. 17 Civ. 7976 (KMK), 2019 WL 2371713 (S.D.N.Y. June 5, 2019) ................................. 11

Stabler v. Congregation Emanu-El of the City of New York,
    No. 16 Civ 9601 (RWS), 2017 WL 3268201 (S.D.N.Y. July 28, 2017) .................................. 5

Sterlinski v. Cath. Bishop of Chicago,
    934 F.3d 568 (7th Cir. 2019)................................................................................................... 4

Sumner v. U.S. Postal Serv.,
    899 F.2d 203 (2d Cir. 1990).................................................................................................... 9

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002) ............................................................................................................... 8

Tucker v. Faith Bible Chapel Int'l,
    36 F.4th 1021 (10th Cir. 2022)............................................................................................ 4, 5

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015)................................................................................................... 8, 13

Webb-Weber v. Cmty. Action for Hum. Servs., Inc.,
    23 N.Y.3d 448, 15 N.E.3d 1172 (2014) ................................................................................ 18

v

Whidbee v. Garzarelli Food Specialties, Inc.,
    223 F.3d 62 (2d Cir. 2000)........................................................................................ 11

Williams v. N.Y. City Hous. Auth.,
    458 F.3d 67 (2d Cir. 2006)........................................................................................ 8

Yarde v. Good Samaritan Hosp.,
    360 F. Supp. 2d 552 (S.D.N.Y. 2005)..................................................................... 16

Zann Kwan v. Andalex Grp. LLC,
    737 F.3d 834 (2d Cir. 2013)............................................................................. 14, 17

Zoulas v. New York City Dep't of Educ.,
    400 F. Supp. 3d 25 (S.D.N.Y. 2019)...................................................................... 12

Statutes

N.Y. Exec. Law §§ 296, 300........................................................................................ 14

N.Y. Not-for-Profit Corp. Law § 715-b(a) ....................................................... 21, 22, 23

NYSHRL and § 1981................................................................................................ 7, 11

Other Authorities

2021 S.B. 4394........................................................................................................... 18

Plaintiff Sandra Betters ("Plaintiff" or "Dr. Betters") respectfully submits this memorandum of law in opposition to the Motion to Dismiss the Amended Complaint filed by Defendants Nardin Academy ("Nardin" or the "School"), Marsha Sullivan ("Sullivan") and Charlie Chiampou ("Chiampou") (collectively, "Defendants"). For the reasons to follow, Defendants' Motion should be denied in its entirety.[1]

## PRELIMINARY STATEMENT

Despite Defendants' best efforts to argue otherwise, Dr. Betters stated a claim for all of her causes of action, identified multiple instances of protected activity, repeatedly reported and complained about Defendants' unlawful actions and was then unlawfully terminated in breach of her Employment Agreement. Notably, Defendants confuse the standards used on a motion to dismiss and continually make arguments only appropriate on a motion for summary judgment, including using the wrong legal standards and attempting to make improper factual assertions.

## SUMMARY OF FACTUAL ALLEGATIONS

In July 2021, after a rigorous hiring process and unanimous approval by the Board of Trustees, Plaintiff was hired to be the President of Nardin Academy, the oldest independent Catholic school in Western New York. See Dkt. No. 58 ¶ 1. During the hiring process, the hiring committee told Dr. Betters that Nardin Academy was looking for a leader to carry out the Diversity,

---

[1] Plaintiff's submission of this opposition is without prejudice to her right to bring a motion to disqualify Phillips Lytle LLP as counsel in this action given that a partner of the firm, Amanda Lowe, will be a fact witness because, inter alia, she (1) attended and was involved in numerous meetings where Plaintiff engaged in protected activity; (2) was openly and vocally opposed to Dr. Betters' termination; (3) regularly consulted with and advised Dr. Betters on personnel decisions that are intertwined within the Amended Complaint; and (4) expressed full support for Dr. Betters before and after her unlawful termination, including sending her flowers and other shows of support.

Equity and Inclusion ("DEI") initiatives previously made by Sullivan and the Board of Trustees, create a desperately needed curriculum for the School, and create a new strategic plan. Id. at ¶ 8.

Unfortunately, when Dr. Betters arrived at the School, it quickly became evident that many faculty members, staff, Trustees and community members were fiercely opposed to any diversity initiatives (id. at ¶ 7); the School's financial and operational state was seriously compromised as a result of nefarious practices happening behind the scenes at Nardin (id. at ¶¶ 9-10); and many teachers, administrators and Board members were strongly resistant to educational changes designed to improve the School and inclusivity. Id. at ¶¶ 91-95.

As Dr. Betters discovered the School's improper and unlawful practices, she reported her serious concerns to the Board of Trustees. Id. at ¶ 10. The more she complained, the louder false complaints against her grew. Id. Ultimately, Dr. Betters faced a mass hysteria fueled by lies, rumors and hate that resulted in being subjected to actual death threats. Id.

Yet, throughout all the lies being spread, the hate being spewed and the defamatory attacks on her personal and professional character, Dr. Betters was guided by one principal – what was best for Nardin – and she continued to make decisions accordingly. Id. at ¶ 11. She continued raising questions about Nardin's financials and blowing the whistle on what she learned, she continued working to improve the diversity and equity at the School and she continued pushing the faculty and administrators to enhance their teaching. Id.

Notably, the complaints against Dr. Betters led to two separate investigations – one by a committee created by the Board and one by outside counsel. Both investigations confirmed without question that Dr. Betters' detractors were utterly unable to articulate any claims against her; instead, they relied upon rumors and faux outrage. Id. at ¶ 12.

2

However, as a result of the hostility, online smear campaign and death threats, in May 2023, Dr. Betters agreed to collaborate in a transition from her role as President. Id. at ¶¶ 306-307. While Dr. Betters and Nardin were in the midst of finalizing the details of her separation, the Board of Trustees, led by Defendant Sullivan, made the sudden decision to terminate Dr. Betters from her position in violation of the Employment Agreement. Id. at ¶¶ 316-317.

## I.    MOTION TO DISMISS LEGAL STANDARD

On a motion to dismiss for failure to state a claim, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." Littlejohn v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015); see also Ocasio v. City of Canandaigua, 513 F. Supp. 3d 310, 319 (W.D.N.Y. 2021). The complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The standard is one of "flexible plausibility," "requiring a pleader to amplify her complaint with sufficient factual allegations to 'nudge [her] claims across the line from conceivable to plausible.'" Chepak v. Metro. Hosp., 555 F. App'x 74, 76 (2d Cir. 2014) (quoting Twombly, 550 U.S. at 570).

When reviewing a motion to dismiss, a court must "assume [the] veracity" of the allegations set forth, draw all "reasonable inference[es]" in the plaintiff's favor and use its "judicial experience and common sense" to conduct a "context specific" analysis of the complaint. Ashcroft, 556 U.S. at 678-79. A plaintiff is not required to plead "specific evidence" explaining precisely how the defendant's conduct was unlawful, Arista Records LLC v. Doe 3, 604 F.3d 110,

3

119-21 (2d Cir. 2010), but only facts sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal citations omitted).

## II.    THE MINISTERIAL EXCEPTION DOES NOT APPLY

The ministerial exception "precludes application of [labor and employment-discrimination] legislation to claims concerning the employment relationship between a religious institution and its ministers." Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C., 565 U.S. 171, 188 (2012). However, it does not preclude discrimination claims brought by a religious employer's non-ministerial employees. See Tucker v. Faith Bible Chapel Int'l, 36 F.4th 1021, 1027 (10th Cir. 2022), cert. denied, 143 S. Ct. 2608, 216 L. Ed. 2d 1208 (2023). The ministerial exception is an affirmative defense that Defendants bear the burden of establishing. Fratello v. Roman Cath. Archdiocese of New York, 175 F. Supp. 3d 152, 162 (S.D.N.Y. 2016), aff'd sub nom. Fratello v. Archdiocese of New York, 863 F.3d 190 (2d Cir. 2017)

It is generally improper to raise the argument that the ministerial exception applies at the motion to dismiss stage given the fact-intensive nature that such an argument requires. See, e.g., Fratello v. Roman Cath. Archdiocese of New York, 175 F. Supp. 3d 152, 162 (S.D.N.Y. 2016), aff'd sub nom. Fratello v. Archdiocese of New York, 863 F.3d 190 (2d Cir. 2017) (holding that the Court "could not determine whether the ministerial exception applied at the motion to dismiss stage because of the necessarily fact-intensive inquiry that exception necessitates…"); Sterlinski v. Cath. Bishop of Chicago, 934 F.3d 568, 571 (7th Cir. 2019), as amended on denial of reh'g and reh'g en banc (Oct. 31, 2019) ("The ministerial exception is a defense … and complaints need not anticipate defenses"); E.E.O.C. v. Roman Cath. Diocese of Raleigh, N.C., 213 F.3d 795, 801 (4th Cir. 2000) ("While the ministerial exception promotes the most cherished principles of religious

4

liberty, its contours are not unlimited and its application in a given case requires a fact-specific inquiry"); Edley-Worford v. Virginia Conf. of United Methodist Church, 430 F. Supp. 3d 132, 141 (E.D. Va. 2019) ("…the resolution of the ministerial exception at this early [motion to dismiss] stage would be premature"); Tucker v. Faith Bible Chapel Int'l, 36 F.4th 1021, 1031 (10th Cir. 2022), cert. denied, 143 S. Ct. 2608, 216 L. Ed. 2d 1208 (2023) ("…[W]hether the plaintiff-employee qualifies as a minister—requires a fact-intensive inquiry. In light of that, there will often be cases…where the district court will be unable to resolve that threshold question at the motion-to-dismiss or summary-judgment stage of litigation. In those cases, the jury will have to resolve the factual disputes and decide whether an employee qualifies as a 'minister' before the affirmative 'ministerial exception' defense is triggered").

In Hosanna-Tabor, the U.S. Supreme Court explained that courts must resolve the threshold question of whether the plaintiff is a minister before moving on to any other considerations to determine if the ministerial exception applies. Hosanna-Tabor, 565 U.S. 171, 181 (2012); see also Stabler v. Congregation Emanu-El of the City of New York, No. 16 Civ. 9601 (RWS), 2017 WL 3268201, at *6 (S.D.N.Y. July 28, 2017) (holding that the only question is whether the employee qualifies as a "minister" within the meaning of the exception).

In order to make that determination, Hosanna-Tabor instructed Courts to look at (1) whether the employer held the employee out as a minister; (2) whether the employee's title reflected ministerial substance and training; (3) whether the employee held herself out as a minister; and (4) whether the employee's job duties included important religious functions.

Defendants argue that Dr. Betters is a "minister" as defined in Hosanna-Tabor for the following five reasons: (1) the Employment Agreement refers to Nardin as "a religiously sponsored institution" and states that her conduct must reflect that fact; (2) Dr. Betters "was hired

as principal of a Catholic academy grounded in 'our Catholic faith'"; (3) "Nardin was founded and is run by a Catholic religious society (the Daughters)"; (4) "Nardin's primary foundational values and her duties as principal were to 'Live & Serve Through Faith'"; and (5) Dr. Betters' "prior Catholic School experience was part of her required support of the Catholic mission of Nardin." See Defs.' Brief at 17-18. Defendants are confused about their burden of proof. Defendants' reasons point only to examples that identify Nardin as a Catholic institution, which is undisputed. The question is whether Dr. Betters was a minister at Nardin, and that answer is clearly no.

Indeed, none of the five factors Defendants listed in support of their position – either on their own or considered together – meet the definition of a "minister" under Hosanna-Tabor. The cases Defendants cite simply emphasize that they cannot meet their burden to show otherwise. Fratello v. Archdiocese of New York, 863 F.3d 190, 208 (2d Cir. 2017) most closely aligns to Dr. Betters' role in that it also involves a lay principal. However, anything more that a cursory review shows how significantly different the facts are given that the lay principal in Fratello was required to "[c]omplet[e] ... Levels I and II of the Catechist Certification Program ... by the [end] of [his or her] fourth year of service… [d]emonstrate proficiency in a number of religious areas [including] [e]mbody[ing] Christ-centered principles, [e]ncourag[ing] the spiritual growth ... of each and every student, [e]xercis[ing] spiritual leadership to ensure a thriving Catholic school community, and exhibiting a [w]illingness to promote Catholic education." Id. In addition, the Plaintiff in Fratello, led daily prayers, supervised and approved the selection of hymns and encouraged and supervised teachers' integration of Catholic saints and religious values in their lessons and classrooms. Id. at 209. Defendants do not and cannot allege that Dr. Betters' role encompassed any of the above.

Further, Defendants reliance on Brandenburg v. Greek Orthodox Archdiocese of N. Am., No. 20 Civ. 3809 (JMF), 2021 WL 2206486 (S.D.N.Y. June 1, 2021) is similarly misplaced given

6

that the Plaintiffs were sanctified nuns who identified themselves as clergy in their Amended

Complaint and ran Mass services.  Id. at *4.  Dr. Betters has never identified as a clergy member,

nor do Defendants claim that she is one, and she has never been responsible for leading Mass.

Similarly, in Cannata v. Cath. Diocese of Austin, 700 F.3d 169 (5th Cir. 2012), the Court

did not simply hold that a music director is a minister.  It focused, instead, on the expert testimony

that found "as a matter of both religious belief and canon law, the Church considers music in the

liturgy to be sacred, with ritual and spiritual dimensions; and a church musician to be a minister

who shares faith, serves the community, and expresses the love of God and neighbor through

music."  As a result, the Court was unable to "second-guess whom the Catholic Church may

consider a lay liturgical minister under canon law."  Cannata, 700 F.3d at 178-180.

Thus, as seen in Fratello, Brandenburg and Cannata, the Courts focused on the role the

plaintiffs held with respect to actual religious services, including leading or playing a significant

role in prayer and Mass.  There is no evidence that Dr. Betters served a similar role.[2]

## III.    DR. BETTERS HAS PROPERLY PLEADED RETALIATION CLAIMS UNDER §1981, TITLE VII AND NYSHRL

"Retaliation claims brought under the NYSHRL and § 1981 are subject to the same

standards as federal claims under Title VII."  Banks v. Gen. Motors, LLC, 81 F.4th 242, 275 (2d

---

[2]    Defendants argue that Dr. Betters affirmatively alleged that "her disputes with some parents concerned her religious duties" because the Amended Complaint states that "her decisions regarding DEI initiatives were a 'direct extension of her Catholic faith.'"  Defs.' Brief at 18 n. 9. Defendants failed to provide the Court with the rest of the quotation: "her commitment to DEI… **was one of the directives given to her by the Board when she was hired**" (emphasis added). Defendants further attempt to support their position by arguing that the Amended Complaint alleges that "some parents disagreed with [Dr. Betters] as a matter of Catholic theology."  Id. Defendants again failed to provide the necessary context, which stated that Dr. Betters' attempts to implement DEI policies and programs was a result of her "doing exactly what she was told that she was hired to do."  See Am. Compl. at ¶ 199.  As a result, Dr. Betters' actions were at the instruction of the Board, and she would have been required to perform them regardless of her religious affiliation – not because of it.

Cir. 2023). "Retaliation occurs when an employer takes action against an employee…because [s]he engaged in protected activity—complaining about or otherwise opposing discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 91 (2d Cir. 2015).

Defendants misstate the legal standard applicable on a motion to dismiss. They argue that Plaintiff is required to "make out a prima facie case of retaliation," which is incorrect at the motion to dismiss stage. See Defs.' Brief at 11. It is well-settled law that a plaintiff is not required to plead facts sufficient to establish a prima facie case of retaliation in order to survive a Rule 12(b)(6) motion to dismiss. See James v. Countrywide Fin. Corp., 849 F. Supp. 2d 296, 311 (E.D.N.Y. 2012) citing Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 72 (2d Cir. 2006) (holding "Plaintiff is not required to plead facts sufficient to establish a prima facie case of Title VII retaliation in order to survive a Rule 12(b)(6) motion to dismiss"); see also Rys v. Grimm, No. 6:19 Civ. 1251 (FJS)(ATB), 2021 WL 827671, at *4 (N.D.N.Y. Mar. 4, 2021) ("For a retaliation claim to survive a Rule 12(b)(6) motion, the plaintiff is merely required to give the defendants fair notice of the retaliation claims and the grounds on which such claims are based"). "Rather, Plaintiff need only provide facts that give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Knight v. State Univ. of New York at Stony Brook, No. 13 Civ. 0481 (JS) (GRB), 2013 WL 6002846, at *3 (E.D.N.Y. Nov. 12, 2013) quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

When using the proper standard for a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) because [s]he has opposed any unlawful employment practice." Vega, 801 F.3d 72, 90. An adverse action includes "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Id. (quoting Burlington N. &

Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).  Under the state law, an employer is liable if "retaliation played any role" in the adverse acts.  Mihalik v. Credit Agricole Cheuvreux, N. Am., Inc., 715 F.3d 102, 116 (2d Cir. 2013).  Moreover, under the NYSHRL, individual defendants may be held liable if he or she "actually participates in the conduct giving rise to the plaintiff's [discrimination or] retaliation claim." Friederick v. Passfeed, Inc., No. 21 Civ. 2066 (RA), 2022 WL 992798, at *9 (S.D.N.Y. Mar. 31, 2022).  "In instances where a person is not directly liable for violating the NYSHRL, that person may still be liable if he is found to have aid[ed], abet[ted], incite[d], compel[led] or coerce[d] the doing of any of the acts forbidden under this [provision], or to attempt[ed] to do so." Id. at *9 (internal quotations omitted).

Out of an abundance of caution, Plaintiff will address Defendants' arguments despite Defendants' use of the incorrect standard at this stage.

### A.   Dr. Betters Engaged in Protected Activity

The standard for protected activity is generally stated as being any conduct "taken to protest or oppose statutorily discriminatory conduct." See, e.g., Giscombe v. New York City Dep't of Educ., 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014).  However, as per the Second Circuit, the standard is very broad and includes "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." Salahuddin v. New York City Dep't of Educ., No. 15 Civ. 6712 (LTS) (DCF), 2017 WL 3724287, at *3 (S.D.N.Y. Aug. 28, 2017) quoting Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990); Kekovic v. Titan Motor Grp. LLC, No. 22 Civ. 2142 (MKB), 2023 WL 6385712, at *8 (E.D.N.Y. Sept. 29, 2023) (same).  The touchstone of this inquiry is whether the employer "could reasonably have understood, that the plaintiff's opposition was

9

directed at [prohibited] conduct." Dillon v. Ned Mgmt., Inc., 85 F. Supp. 3d 639, 659 (E.D.N.Y. 2015) (citations and quotations omitted).

Here, Dr. Betters alleges that she complained about the following discriminatory practices, among others: (i) in November 2021, Dr. Betters complained that the Director of Diversity, Inclusion and Opportunity, Kendra Brim, was subjected to racially based harassment and threats after attempting to institute DEI trainings for the Board, staff and students (see Am. Compl. at ¶¶ 155-158, 168-170); (ii) in the Summer and Fall of 2022, Dr. Betters complained that Defendant Lawley ordered Dr. Betters in a threatening manner not to hire another Director of Diversity, Inclusion and Opportunity after Ms. Brim left her position (id. at ¶¶ 172-173); (iii) after Dr. Betters refused to abide by Defendant Lawley's threat and hired a new Director of Diversity, Inclusion and Opportunity in October 2022, she alleges that she made repeated complaints that the new Director, Karen Brown, was also facing hostile emails and harassment from Board members and faculty for trying to implement diversity initiatives (id. at ¶¶ 178-179); (iv) Dr. Betters questioned the lack of diversity among the teaching staff and reported the School's past failure to interview diverse candidates who applied (id. at ¶¶ 182-184); and Dr. Betters reported to the Board in April 2023 that she was placing a teacher who used a racial slur toward a Black student on suspension and that another educator confirmed the teacher's discriminatory behavior (id. at ¶¶ 268-270).

Despite Defendants' assertion otherwise, Dr. Betters has plainly identified individuals whose contractual rights were impaired on the basis of race. In particular, Dr. Betters alleged that both Ms. Brim and Ms. Brown were subjected to a racially hostile work environment. Albunio v. City of New York, 16 N.Y.3d 472, 479 (2011) (employee engaged in protected activity "by communicating to [supervisor], in substance, that she thought [treatment of colleague] was wrong"). Further, while Dr. Betters does not identify them by name, the job applicants who were

not interviewed on the basis of race were also subjected to a discriminatory failure to hire.  See, e.g., Meyenhofer v. Larsen & Toubro Infotech Ltd., 503 F. Supp. 3d 39, 48 (S.D.N.Y. 2020) (discriminatory failure to hire actionable); Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (hostile work environment actionable).

In addition, although Dr. Betters does not rely strictly upon this argument, several courts have found that complaints about a lack of diversity in the workplace are, in fact, "protected activity" under the law.  See Lyte v. S. Cent. Connecticut Reg'l Water Auth., 482 F. Supp. 2d 252, 269 (D. Conn. 2007) (protected complaint included that plaintiff "spoke to managers . . . about the lack of diversity . . . and the need to advance diversity issues"); Soto v. Marist Coll., No. 17 Civ. 7976 (KMK), 2019 WL 2371713, at *10 (S.D.N.Y. June 5, 2019) (stating that plaintiff "was arguably 'protesting against discrimination industry or by society in general' by discussing the lack of diversity at Marist with his class."); see also Cantley v. Indiana Univ. Health, Inc., No. 13 Civ. 01296 (TWP) (MJD), 2015 WL 5692511, at *9 (S.D. Ind. Sept. 28, 2015) (denying summary judgment where complaint was limited to "comments about a lack of diversity in leadership and Black females in entry level positions" because "the inference can be made that Ms. Cantley complained to Ms. Riley about discriminatory hiring practices and such complaint was a protected activity."); Gordwin v. Amazon.com Inc., No. 21 Civ. 00888 (PHX) (SPL), 2021 WL 5396086, at *7 (D. Ariz. Nov. 17, 2021) ("Plaintiff first plausibly engaged in protected activity in January 2020 when she voiced concerns about the lack of diversity in certain senior leadership roles").

Accordingly, Dr. Betters' complaints all plausibly involve and/or implicate statutorily prohibited conduct under Title VII, § 1981 and the NYSHRL, including discriminatory failure to hire and discriminatory hostile work environment, and are sufficient to show that Dr. Betters engaged in protected activity by protesting and opposing statutorily discriminatory conduct.

**B.      Defendants Had Knowledge About Dr. Betters' Protected Activity**

A plaintiff can show that defendants had knowledge of the protected activity by pleading facts that permit the Court to "reasonably infer that she engaged in protected activity known to the Defendants." Zoulas v. New York City Dep't of Educ., 400 F. Supp. 3d 25, 57 n.8 (S.D.N.Y. 2019). And even when a plaintiff does not allege that "the individual decision-maker" had "knowledge of protected activity," the plaintiff may survive a motion to dismiss by pleading that "the decision-maker was at least influenced or encouraged to take the adverse action by a superior with knowledge of the protected activity." Seivright v. Montefiore Med. Ctr., Hosp. of Albert Einstein Coll. of Med., No. 11 Civ. 8934 (AJN), 2014 WL 896744, at *12 (S.D.N.Y. Mar. 3, 2014) (citing Henry v. Wyeth Pharms., Inc., 616 F.3d 134, 147–48 (2d Cir. 2010)); see also Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000) ("Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity").

Here, Plaintiff plausibly alleges that she reported discriminatory practices. In particular, Dr. Betters complained about the racially based harassment and threats Ms. Brim was receiving to the entire Board of Trustees in or around November 2021 (see Am. Compl. at ¶ 170); complained about Defendant Lawley's racist hiring directive to the Board of Trustee's leadership in both the Summer and Fall of 2022 (id. at ¶ 173); made repeated complaints to the Board of Trustees about the harassment Ms. Brown faced as a result of her DEI efforts after she was hired in October 2022 (id. at ¶ 179); reported Nardin's failure to interview diverse candidates to the Board (id. at ¶ 184); and Dr. Betters reported to the Board in April 2023 that she was placing a teacher who used a racial slur toward a Black student on suspension and that another educator confirmed the teacher's discriminatory behavior toward the student (id. at ¶¶ 268-270). As a result, Defendants' assertion

12

that Dr. Betters did "not identify any reports she made that would have put Nardin on notice that she was opposing some action prohibited by § 1981, Title VII, or the HRL" is wholly unsupported by the pleadings.  See Defs.' Brief at 15.

### C.    Defendants Took an Adverse Employment Action Against Dr. Betters

"The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).  However, "the antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Id. at 64.

Defendants argue that "the only adverse employment action specifically alleged is Betters' termination." See Defs.' Brief at 17.  The Amended Complaint demonstrates otherwise.  By way of example, Dr. Betters alleged that Defendants took adverse actions against her by engaging in a pattern of harassment, defaming her, subjecting her to a hostile work environment, terminating her employment and violating her Employment Agreement. See Am. Compl. at ¶¶ 334, 344, 352.  All of these examples could dissuade a reasonable worker from making or supporting a complaint.

### D.    Dr. Betters Alleged Causation Between Her Complaints and Termination

Contrary to Defendants' contentions, the Amended Complaint easily alleges a causal connection between Dr. Betters' protected complaints and her subsequent termination.  A causal connection can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111,

13

117 (2d Cir. 2000). "[C]ausation does not [,however,] require proof that retaliation was the *only* cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013) (emphasis added). In any case, but-for causation applies *only* to the federal retaliation standard.

Under the NYSHRL, the motion to dismiss must be denied if Plaintiff pleads that "retaliation *played any part*" in the decision to terminate her. Mihalik, 715 F.3d at 116 (emphasis added); see Syeed v. Bloomberg L.P., 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) ("the amended NYSHRL adopts the same standard as the NYCHRL."); N.Y. Exec. Law §§ 296, 300 (the NYSHRL must "be construed liberally . . . regardless of whether federal civil rights laws . . . have been so construed.")

Plaintiff definitively alleges a causal connection between her protected activities and her termination. In the Fall of 2022, Dr. Betters complained to Defendants about their racially discriminatory hiring practices. See Am. Compl. at ¶ 173. Lawley became "enraged" when he learned of this, circulating scathing emails about Betters in response. Id. at ¶ 175. Dr. Betters then resisted the racist hiring directive by publicly posting the Director of Diversity position, interviewing candidates and obtaining an outside agency to assist with more fair hiring practices. Id. at ¶¶ 176-184. See Little v. Nat'l Broad. Co., 210 F. Supp. 2d 330, 386 (S.D.N.Y. 2002) (explaining that "resisting" discrimination is a protected activity). Lawley's hostile reactions are direct evidence of retaliatory intent. See, e.g., Dedjoe v. McCarthy, No. 115 Civ. 170 (LEK) (CFH), 2017 WL 4326516, at *14 (N.D.N.Y. Sept. 28, 2017) (allowing plaintiff's retaliation claim to defeat summary judgment based on employer's hostile response to plaintiff's racial discrimination complaints, including "rais[ing] his voice in anger" and expressing "frustration").

14

In addition, after Dr. Betters hired Karen Brown, a new Director of Diversity, Inclusion and Opportunity, in October 2022, she made repeated complaints to the Board of Trustees about the harassment Ms. Brown was facing. Am. Compl. at ¶ 179. As alleged, these complaints began subsequent to Ms. Brown's hire in October 2022 and the harassment continued, which forced Dr. Betters to make multiple complaints. Id. at ¶¶ 179-181. Drawing all inferences in Dr. Betters' favor, as is required at the motion to dismiss stage, these complaints could have continued for many months after Ms. Brown's October 2022 hire date.

Even if Dr. Betters lacked other allegations (though she does not), she would plead a causal inference through temporal proximity between her protected activities and termination. A recent Second Circuit case held that "six months . . . between [] filing [a] complaint" and an adverse action "fits within the range of time that we have held can support a reasonable inference of causation." Banks v. Gen. Motors, LLC, 81 F.4th 242, 278 (2d Cir. 2023). Banks also cited with approval a case holding that eight months sufficed to establish causation by temporal proximity. See id. (citing Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir. 1980)). Here, Defendants argued—wrongly—that the "only potentially relevant date" of protected activity was Dr. Betters' hiring practices complaint in November 2021. See Defs.' Brief at 17-18. Yet, as detailed herein, Dr. Betters made protected complaints in much closer proximity to her June 2023 termination including (1) repeated complaints to the Board of Trustees about the harassment Ms. Brown faced as a result of her DEI efforts *after* she was hired in October 2022, which, when drawing all inferences in Dr. Betters' favor, as is required at the motion to dismiss stage, these complaints could have continued for many months after Ms. Brown's October 2022 hire date (id. at ¶ 179), and (2) she reported to the Board in April 2023 that a teacher who used a racial slur toward a student was being suspended and that another educator confirmed the teacher's

15

discriminatory actions toward the student (id. at ¶¶ 268-270).  As a result, Defendants' assertion that Dr. Betters did "not identify any reports she made that would have put Nardin on notice that she was opposing some action prohibited by § 1981, Title VII, or the HRL" is wholly unsupported by the pleadings.  See Defs.' Brief at 23.

In any event, "the absence of close temporal proximity of the protected activity to the adverse action is not necessarily fatal, because evidence of an ongoing pattern of retaliatory conduct and intent can also establish a causal connection."  Shub v. Westchester Cmty. Coll., 556 F. Supp. 2d 227, 246 (S.D.N.Y. 2008).  Here, the Amended Complaint is replete with allegations of ongoing retaliatory conduct.

Finally, Defendants contend that "intervening events" negate any inference of causation.  As a threshold matter, Plaintiff sufficiently alleged causation and, thus, "[i]ssues of proximate cause," such as whether an intervening act severed the chain of causation, "are normally questions of fact for the jury to decide."  Packer v. Skid Roe, Inc., 938 F.Supp. 193, 196 (S.D.N.Y. 1996).  Additionally, events often have multiple causes, and "a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision."  Bostock v. Clayton Cnty., Georgia, 590 U.S. 644, 656 (2020).  Thus, although Dr. Betters originally "agreed" to collaborate with Nardin regarding her transition, she was still ultimately terminated.  Am. Compl. at ¶ 316.  The prospective negotiation does not, at this stage, negate other inferences of causation.  To hold so would require drawing an inference in favor of Defendants, i.e. that their termination bore no connection whatsoever with her prior complaints.[3]

---

[3]   Defendants cite a case where "intervening events" were extreme Plaintiff-related actions like when a nurse violated patient confidentiality, created a ruckus on the floor, and failed to cooperate in the hospital's investigation.  Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005).  But Yarde is a summary judgment case, demonstrating that the Court should not assess this argument now and should instead wait until after discovery.

16

In fact, Defendants' intervening argument highlights their inconsistent explanations for Dr. Betters' termination. "A plaintiff may prove that retaliation was a . . . cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." Zann Kwan, 737 F.3d at 846. In the Fall of 2022, Nardin faculty members signed a letter "express[ing] a lack of confidence in the current executive leadership of Nardin Academy." Am. Compl. at ¶ 261. The signatories repeatedly contradicted themselves, however, with pretextual reasons such as "lack of interest" and "micromanagement." Id. at ¶ 263. Nardin then stated, "The third-party assessment . . . showed no wrongdoing or misconduct on Sandra's [Betters] part." Id. at ¶ 308. Now, they would have the Court believe they had no reason to terminate Dr. Betters apart from the fact that she engaged in separation negotiations. The inconsistent explanations for Dr. Betters' termination and the close temporal proximity between her protected conduct and her termination are sufficient to show causation and defeat a motion to dismiss. Zann Kwan, 737 F.3d at 847.

**IV.    DR. BETTERS PROPERLY PLEADED HER WHISTLEBLOWING CLAIMS**

**A.    Nardin Subjected Dr. Betters to Unlawful Retaliation in Violation of NY Whistleblower Law, § 740**

Labor Law § 740(2)(a) prohibits an employer from "tak[ing] any retaliatory action against an employee" because the employee "discloses, or threatens to disclose to a supervisor . . . an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation." A "'[r]etaliatory action' means an adverse action taken by an employer or his or her agent to discharge, threaten, penalize, or in any manner discriminate against any employee" for engaging in protected activity, including, "but not limited to, discharge, suspension or demotion," or taking action "that would adversely impact a former employee's current or future employment." Labor Law § 740(1)(d). To prevail, a plaintiff need not "specify the actual law,

17

rule or regulation violated." Webb-Weber v. Cmty. Action for Hum. Servs., Inc., 23 N.Y.3d 448, 453, 15 N.E.3d 1172 (2014). She need only "identify the particular activities, policies or practices in which the employer engaged." Id.

Protected activity is not limited to formal protests. Hubbard v. Total Comm'ns, Inc., 347 F. App'x 679, 680 (2d Cir. 2009). Rather, any expression or disapproval is protected. Crawford v. Metro. Gov't of Nashville & Davidson Cnty. Tenn., 555 U.S. 271, 276 (2009). "[A]ny activity designed to 'resist or antagonize. . .; to contend against; to confront; resist; [or] withstand'. . . constitutes a protected oppositional activity." Littlejohn, 795 F.3d at 317 (quoting Crawford, 555 U.S. 271, 276 (2009)). Moreover, no "magic words" are required. Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 363 (S.D.N.Y. 2012); see Farmer v. Shake Shack Enterprises, LLC, 473 F. Supp. 3d 309, 331 (S.D.N.Y. 2020) ("When an employee communicates to her employer a belief that the employer has engaged in [unlawful activity], . . . that communication virtually always constitutes the employee's opposition to the activity.") (quoting Littlejohn, 795 F.3d at 317) (emphasis in original). Accordingly, under § 740, it is "sufficient that an employee establish that he/she reasonably believed that the employer was violating the law, not that the law was actually violated." See NY Spons. Memo, 2021 S.B. 4394; see also Webb-Weber v. Cmty. Action for Human Servs., Inc., 23 N.Y.3d 448, 453 (2014) (holding that plaintiffs do not need to definitively prove that the objected-to activity constituted a violation of a specific law).

In addition to Dr. Betters' protected complaints of discrimination detailed in Section III herein, Dr. Betters reported the following financial improprieties to the Board of Trustees that she believed violated a law, rule or regulation: (1) a payment to Mod-Pac, a local manufacturer of packaging materials, using PPP funds (Am. Compl. at ¶¶ 51-54, 115); (2) the extent and cost of Nardin's insurance policies, which were being underwritten by Lawley Insurance owned by Board

18

of Trustee member/Defendant Lawley (id. at ¶¶ 58, 115); (3) misuse of PPP & Covid-19 relief funds (id. at ¶¶ 115, 122-124); (4) misuse of funds earmarked for enrichment (id. at ¶¶ 79, 115); (5) the misuse of funds related to the technology budget (id. at ¶¶ 59-60, 115); (6) concerns about Nardin's Chief Financial Officer, Greg Altman's, irregular financial practices (id. at ¶¶ 112-115); and (7) concerns that the School was in significant and unexplained debt in addition to paying significant interest (id. at ¶¶ 49-50, 115). In addition, in March 2023, Dr. Betters reported to the Board that the IT department at Nardin was unlawfully listening to the sound on all School cameras. Id. at ¶¶ 238-240. That is sufficient to allege a plausible claim.

Further, Defendants argument that Dr. Betters cannot state a claim for retaliation because she did not inform Defendants that she believed the practices identified herein were "illegal" is false. Defs.' Brief at 27. The Amended Complaint specifically states that Dr. Betters reported: (1) "financial improprieties" related to all of the allegations detailed in the paragraph above (Am. Compl. at ¶ 115); (2) "unlawful use of monies received pursuant to the Paycheck Protection Plan" (id. at ¶ 5); (3) "fraudulent use of PPP and Covid-19 relief funds to the entire Board" (id. at ¶ 124); and (4) fraudulent financial information being provided to the Board and the Chair of the Finance Committee (id. at ¶ 119-200). Under both colloquial and legal use, the terms unlawful, fraudulent and financial impropriety indicate a violation of a law, rule or regulation. There is no requirement under the law that Dr. Betters was required to use the term "illegal." Malena, 886 F. Supp. 2d at 363 (S.D.N.Y. 2012) (holding no "magic words" are required).

Defendants argue without citing any supporting law that Dr. Betters could not have opposed practices that occurred prior to her arrival. Defs.' Brief at 22. This premise is not supported by a plain reading of the statute or common sense. If taken literally, it would mean that

19

an employee could not report any unlawful action by an employer prior to the employee beginning employment but discovered after employment commenced.

As the Amended Complaint states, some, but not all, of the financial improprieties that Dr. Betters discovered began prior to her arrival but continued to have an impact on Nardin while she was President.  Am. Compl. at ¶¶ 49-50, 56-57, 67, 115.  She discovered and reported these financial improprieties because they had a lasting and continued effect on the School during her employment.  Id. at ¶ 49.

Defendants again argue—wrongly—that Dr. Betters did not "allege facts permitting an inference of causation."  Defs.' Brief at 30.  However, Dr. Betters reported the financial improprieties at a Spring 2022 executive board meeting (Am. Compl. at ¶¶ 114-115); she reported alleged fraudulent financial reporting to the Chair of the Finance Committee on the Board of Trustees in the Summer of 2022, followed by a reporting of the same to the Investment Committee, the entire Board of Trustees and Nardin's counsel (id. at ¶¶ 119-120); she reported the auditor's concerns about financial improprieties to the Executive Board in December 2022 (id. at ¶ 129); and she reported Nardin's unlawful audio recording of students and staff within the School in March 2023 (id. at ¶¶ 238-240).  She was formally terminated in June 2023.  See Banks, 81 F.4th 242, 278 (2d Cir. 2023) (holding "six months . . . between [] filing [a] complaint" and an adverse action "fits within the range of time that we have held can support a reasonable inference of causation").  Moreover, "the absence of close temporal proximity of the protected activity to the adverse action is not necessarily fatal, because evidence of an ongoing pattern of retaliatory conduct and intent can also establish a causal connection."  Shub, 556 F. Supp. 2d 227, 246 (S.D.N.Y. 2008).

20

As a result, Dr. Betters adequately placed Defendants squarely on notice that she was reporting potentially illegal activity, her termination was in close proximity to her complaints and she properly pleaded her whistleblower claims under Labor Law § 740.

**B.    Nardin Subjected Dr. Betters to Unlawful Retaliation in Violation of NY Whistleblower Law, § 715-b**

Section § 715-b provides that non-profit corporations must "adopt a whistleblower policy to protect from retaliation persons who report suspected improper conduct." N.Y. Not-for-Profit Corp. Law § 715-b(a). It further provides that "[s]uch policies shall provide that no director, officer, key person, employee or volunteer of a corporation who in good faith reports any action or suspected action taken by or within the corporation that is illegal, fraudulent or in violation of any adopted policy of the corporation shall suffer intimidation, harassment, discrimination or other retaliation or, in the case of employees, adverse employment consequence." Id. Defendants' arguments that Dr. Betters does not have a claim under Section § 715-b are unavailing.

First, Defendants argue Dr. Betters failed to state a claim under Section § 715-b because she alleged that *either* Nardin did not have a compliant policy or had a policy but did not follow it. See Defs.' Brief at 31. Defendants claim that Nardin would be in compliance with the statute as long as the School had a whistleblower policy, regardless of whether the School actually followed the policy. Id. The plain language of the statute says otherwise. Section § 715-b(a) requires nonprofits to "adopt, and oversee the implementation of, and compliance with" the whistleblower policy (emphasis added). The courts agree that compliance is required. See, e.g., Joshi v. Trustees of Columbia Univ. in City of New York, 515 F. Supp. 3d 200, 224 (S.D.N.Y. 2021), aff'd, No. 21-418, 2022 WL 3205883 (2d Cir. Aug. 9, 2022) (an employer "complied with the statute by implementing the relevant policies to protect whistleblowers and ... adhered to those policies").

21

Second, Defendants argue that there is no private right of action under Section § 715-b. See Defs.' Brief at 31.  While it is true that New York courts have been divided as to whether Section 715-b implies a private right of action, the Southern District of New York most recently held that "the authority implying a private right of action [is] more persuasive."  Joshi, 515 F. Supp. 3d at 224; see also Craig v. City of New York, No. 1:20 Civ. 02152 (LDH)(PK), 2022 WL 4596744, at *10 (E.D.N.Y. Sept. 30, 2022) (assuming that a private cause of action exists under Section 715-b).

Third, Defendants allege that even if there is a private right of action, Section § 715-b is not applicable to Dr. Betters because it is not applicable to officers.[4]  See Defs.' Brief at 31. However, Defendants do not actually argue that Dr. Betters was an officer and there is no evidence in the record to support that assertion.  The Amended Complaint specifically alleges that Dr. Betters was an employee of Nardin Academy.  Am. Compl. at ¶ 19 (emphasis added).  In addition, the case that Defendants rely upon as standing for the proposition that "an Executive Vice President of defendant did not have a private right of action" under Section § 715-b was subsequently modified by the Appellate Division because Defendants failed to prove that the plaintiff was an officer.  See Rosen v. Zionist Org. of Am., No. 159365/22, 2024 WL 1313207, at *1 (N.Y. App. Div. Mar. 28, 2024) (finding that the Supreme Court's decision to dismiss the

---

[4]    State courts appear to be split on this question.  See Flanagan v. Girl Scouts of Suffolk Cnty., Inc., No. 21 Civ. 7153 (KAM) (ARL), 2023 WL 6594885, at *8 (E.D.N.Y. Aug. 25, 2023), report and recommendation adopted as modified, No. 21 Civ. 7153 (KAM) (ARL), 2023 WL 6307362 (E.D.N.Y. Sept. 28, 2023) ("…according to recent authority, that privilege does not extend to officers of a not-for profit corporation") compared to People by James v. Nat'l Rifle Ass'n of Am., Inc., 74 Misc. 3d 998, 1028, 165 N.Y.S.3d 234, 255 (N.Y. Sup. Ct. 2022) (denying motion to dismiss Section § 715-b claims against the National Rifle Association, the CEO, and the Chief of Staff).  In any case, this Court does not need to make that determination given that there is no allegation or evidence in the record that Dr. Betters was an officer in the first place.

plaintiff's cause of action under 715-b was incorrect and, instead, holding that defendants failed to refute plaintiff's allegation that he was an employee rather than an officer of ZOA).

Accordingly, at the motion to dismiss stage where "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor" (Littlejohn, 795 F.3d 297, 307 (2d Cir. 2015), it is plainly evident that Defendants cannot show that the Dr. Betters was an officer and her claims under Section § 715-b should not be dismissed.

## V.    DR. BETTERS PROPERLY PLEADED HER BREACH OF CONTRACT CLAIM

"A plaintiff's [breach of contract] claim should not be dismissed if she has an arguable claim under the contract" Lamoureux v. Trustco Bank, 592 F. Supp. 3d 14, 27 (N.D.N.Y. 2022) (internal quotations omitted).    However, "[c]ourts may dismiss breach-of-contract claims on a Rule 12(b)(6) motion to dismiss where the language is clear and unambiguous" Id. (internal quotations omitted).  "'Ambiguous' contract language is that which is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'"  Direct Mail of Maine, Inc. v. Conduent Bus. Servs., LLC, No. 6:22 Civ. 6570 (FPG), 2023 WL 8602135, at *4 (W.D.N.Y. Dec. 12, 2023) quoting Eskimo Pie Corp. v. Whitelawn Dairies, Inc., 284 F. Supp. 987, 994 (S.D.N.Y. 1968).

Here, there is no dispute between the Parties about the language of the Employment Agreement, which states that Dr. Betters is entitled to a severance payment if she "enters into an Agreement acceptable to Nardin that waives and releases any and all claims Ms. Betters may have against Nardin."  See Defs.' Brief at 32; Am. Compl. at ¶ 317 (emphasis added).  However, the Parties dispute the meaning of the language, which necessarily renders it ambiguous, which must be resolved in Dr. Betters' favor.  See Roy v. ESL Fed. Credit Union, No. 19 Civ. 6122 (FPG),

23

2020 WL 5849297, at *7 (W.D.N.Y. Sept. 30, 2020) ("On a motion to dismiss, any ambiguity must be resolved in Plaintiff's favor").

The Employment Agreement requires that the severance agreement only release claims against Nardin. Yet, Defendants argue that Nardin was entitled to require Dr. Betters to sign *any* agreement acceptable to Nardin regardless of who or what was released or what other terms were included. See Defs.' Brief at 33. As a result, in a breach of her Employment Agreement, Nardin provided Dr. Betters with a separation agreement that included terms that far exceed a general release against Nardin, including a release of claims against not only the Academy, but also "[a]ffiliates ("Affiliates" means a parent, subsidiary or other related corporation or entity which controls Employer, is controlled by Employer or is under common control with Employer, where "control" means possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a corporation or entity, whether through management authority, equity interest or otherwise) and all of Employer's and its Affiliates' respective current and former employees, directors, officers, trustees, agents, attorneys, members, partners, shareholders, insurers, representatives, predecessors, successors and assigns, all persons acting with or on behalf of them, and all employee benefit plans and programs sponsored by any of them and their service providers, administrators and fiduciaries (as the term fiduciary is defined under the Employee Retirement Income Security Act of 1974, as amended)." Am. Compl. at ¶ 319.

On its face, that language far surpasses the requirements of the Employment Agreement, which specifically requires (1) that if Dr. Betters was terminated without cause, she was entitled to thirty days written notice of termination, and (2) a specific severance if she signed a waiver and

release that released any and all claims against Nardin.[5]  Am. Compl. at ¶ 317.  If Nardin intended to require Dr. Betters to sign an agreement releasing claims against all of the entities and individuals identified, it could have drafted the Agreement to say so.  The School failed to do so. As a result, Dr. Betters was never presented with a severance agreement in compliance with her Employment Agreement and Nardin failed to fulfill their obligations under the employment agreement.  Accordingly, Defendants' motion to dismiss the breach of contract cause of action should be denied.

## **CONCLUSION**

For all of the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety and this case should proceed to discovery and trial.

Dated:  April 5, 2024
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
    Michael J. Willemin
    Monica Hincken

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
mhincken@wigdorlaw.com

*Counsel for Plaintiff*

---

[5]    "Nardin" is defined solely as "Nardin Academy" in the Employment Agreement.